GYLES MERRILL vs. BYRON L. PEASLEE & others.

Essex. November 5, 1887. — March 30, 1888.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Husband and Wife — Promissory Note — Consideration — Public Policy.*

A husband guilty of extreme cruelty to his wife, who thereupon left him and consulted counsel as to obtaining a divorce and alimony, gave a note to a trustee for her benefit, in consideration that she would drop the divorce proceedings and "return to him and live with him as his wife"; and the wife returned to him and lived with him as his wife until his death. *Held*, that the consideration for the note was illegal. — C. ALLEN, HOLMES, & KNOWLTON, JJ., dissenting.

CONTRACT upon a promissory note for $5,000, dated October 29, 1875, payable to the order of the plaintiff on demand, and signed by Hiram Peaslee, the defendants' testator. The answer set up want of consideration. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows.

The plaintiff introduced evidence tending to show that Hiram Peaslee was married to Abby D. Rowe on January 20, 1873, and that they lived together as husband and wife until October 13, 1875 ; that at the wedding of his daughter, which occurred at his house on that date, and in the presence of some of the guests, Hiram Peaslee was guilty of extreme cruelty and abusive treatment towards his wife, entitling her to a divorce ; that she then left him, and consulted counsel with a view to obtaining a divorce and alimony, he being worth about seventy-five thousand dollars at the time ; that Hiram Peaslee agreed with her, that, if she would not proceed against him for a divorce or alimony, and would return to him and live with him as his wife, he would secure to her benefit the sum of five thousand dollars ; and that in pursuance of the agreement Hiram Peaslee signed the note, and delivered it to the plaintiff, from whom at the same time he took the following agreement under seal, signed by " Gyles Merrill, trustee " :

" Be it known that Hiram Peaslee of Haverhill, in the county of Essex and Commonwealth of Massachusetts, on this twenty-

ninth day of October, A.D. 1875, has made and delivered to me, Gyles Merrill of said Haverhill, for value received, his promissory note for five thousand dollars, payable to me or order on demand, without interest, subscribed by him in the presence of a witness, and so made and delivered the same to me in trust, for the following purposes, viz.: I as such trustee am to retain said note in my keeping and control until the decease of said Peaslee, and then as soon as may be after such decease to collect the amount of the same in money from the estate of said Peaslee, and to pay such amount over to Abby D. Peaslee, wife of said Hiram Peaslee, provided she shall then be the widow of said Hiram, and shall have lived with him as his wife, and not have separated herself from him until his decease, unless for good cause hereafter arising. But if said Abby D. Peaslee shall have so separated herself from said Hiram, and at his decease shall not be his widow, then I, said trustee, am to deliver said note to the legal representatives of the estate of said Hiram, and to receive my reasonable charges for services in the premises from said estate."

The plaintiff introduced further evidence tending to show that the note was given by Hiram Peaslee in consideration that his wife would return to him, and live with him as his wife, and in consideration that she would not institute proceedings for a divorce and alimony, and that there was no other consideration for the note, excepting the acceptance of the trust by the plaintiff and the above agreement on his part; and that the wife, in consideration of the making and delivery of the note, thereupon returned to and lived with him as his wife until his death, and thereby relinquished her right to institute proceedings for a divorce and alimony, and did not institute such proceedings.

The judge ruled that there was no evidence of a legal consideration for the note, and that as matter of law the action could not be maintained, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

The case was argued at the bar in November, 1887, and afterwards was submitted on briefs to all the judges.

*H. Carter & B. B. Jones,* for the plaintiff.

*W. H. Moody,* for the defendants.

W. ALLEN, J.   The note was given to carry out a contract between husband and wife, by which, in consideration that she should live with him as his wife during their joint lives, he was to cause to be paid to her five thousand dollars after his decease, if she survived.   The consideration of the note was the agreement, or the performance of the agreement, of the wife to live in marital relations with her husband.   It was not to perform some service for him which could be hired, as to keep his house, or to nurse him in sickness, but to give him the fellowship and communion of a wife.   This is not a service which the wife can sell or the husband buy.   Perhaps a husband can hire his wife to do anything for him which a servant can be hired to do, or can buy of her anything that is the subject of barter ; but a servant cannot be hired to fulfil the marital relation, and the fellowship of the wife is not an article of trade between husband and wife. Like parental authority and filial obedience, conjugal *consortium* is without the range of pecuniary considerations.   The law fixes and regulates it on public considerations, and will not allow the parties to discard and resume it for money.

It is the same when the misconduct of one party has given to the other the option to withdraw conjugal fellowship.   It is not a mere personal right affecting only the parties to the marriage, but a right which is an incident of the status of marriage, and which affects children, the family, and society, and which must be exercised upon considerations arising from the nature of the right. It is given to the injured party to be used in the interests of justice and of society.   It is as much against public policy to restore interrupted conjugal relations for money, as it is to continue them without interruption for the same consideration. The right of condonation is not exercised for the sake of justice to the injured party, or with regard to the rights of others or the interests of the public, when it is sold for money, and the law cannot recognize such a consideration for it ; it implies forgiveness founded on the supposed penitence of the wrongdoer and the hope that he will not again offend.   The resumption of marital intercourse after a justifiable separation without such forgiveness, and only for money, shows connivance rather than condonation.   See *Copeland* v. *Boaz*, 9 Baxter, 223 ; *Van Order* v. *Van Order*, 8 Hun, 315 ; *Roberts* v. *Frisby*, 38 Tex. 219 ; *Miller*

v. *Miller*, (Iowa,) 35 N. W. Rep. 464; *Adams* v. *Adams*, 91 N. Y. 381; *Garth* v. *Earnshaw*, 3 Y. & C. 584; *Gipps* v. *Hume*, 2 Johns. & Hem. 517; *Brown* v. *Brine*, 1 Ex. D. 5.

In the present case the wife had left her husband, and had a good cause of divorce from him on account of extreme cruelty. But the agreement did not look to a provision for the separate support of the wife, nor to a bar against proceedings by her for a divorce, except as that was involved in the resumption by her of marital relations. Had the consideration of the note been an agreement not to prosecute proceedings for a divorce, a different question would have been presented, upon which we express no opinion. See *Newsome* v. *Newsome*, L. R. 2 P. & D. 306. When the wife, who was living separate from her husband for justifiable cause, voluntarily returned to him, the law conclusively presumed that she returned because she had condoned the offence, and not because she was paid to live with him; and it will not enforce or recognize as valid a promise of the husband to pay money to the wife to induce her to return to him, or to condone the offence. In the opinion of a majority of the court the entry must be, *Exceptions overruled.*

HOLMES, J. We must assume, and the majority of the court do assume, that a consideration furnished by a married woman who is a *cestui que trust* will sustain a promise by her husband to her trustee. Whatever might be thought upon this point as a new question, it has been settled, not without discussion, and we are bound by the decisions. *Butler* v. *Ives*, 139 Mass. 202. See *Nichols* v. *Nichols*, 136 Mass. 256.

In the case at bar the evidence tended to show that the defendant's testator had been guilty of extreme cruelty to his wife, entitling her to a divorce, and that she had separated from him, and had consulted counsel with a view to obtaining a divorce and alimony. The consideration for the note in suit was, that " she would not proceed against him for a divorce or alimony, and would return to him and live with him as his wife." This consideration, however construed, was fully furnished. She did not proceed against him, and she did return and did live with him as his wife until his death.

I do not understand it to be denied that this conduct on the

wife's part was such a change of position, or detriment in the legal sense of that word, as to be a sufficient consideration for a promise, if not an illegal one. We must take it that the wife had a right to refuse to return to cohabitation, and it seems to follow that, apart from illegality, the return itself was sufficient consideration for the note. *Burkholder's appeal*, 105 Penn. St. 31, 37. The case is not like those where the wife was only doing what she was legally bound to do. This was the ground of decision in *Miller* v. *Miller*, (Iowa, Dec. 13, 1887,) 35 N. W. Rep. 464, and, so far as appears, was the fact in *Copeland* v. *Boaz*, 9 Baxter, 223 ; *Roberts* v. *Frisby*, 38 Tex. 219. The last two cases seem to go in part also upon the ground that a contract by a husband upon a consideration moving from the wife is void, notwithstanding the intervention of a trustee, which cannot be taken here, in view of the cases first cited.

At all events, the giving up or refraining from proceedings for a divorce and alimony, which the wife is entitled to maintain, is both a sufficient and a legal consideration. *Wilson* v. *Wilson*, 1 H. L. Cas. 538, 574 ; *S. C.* 14 Sim. 405 ; 5 H. L. Cas. 40. *Hart* v. *Hart*, 18 Ch. D. 670, 685. *Sterling* v. *Sterling*, 12 Ga. 201, 204. So that I understand the precise reason on which the decision of the majority goes to be that coupling the wife's return to cohabitation with the legal consideration of giving up her divorce suit made the contract illegal.

I find no decision or dictum in favor of this proposition. On the other hand, the Court of Errors and Appeals of New York has unanimously sustained the validity of a note given by a husband to a trustee for his wife upon substantially the same consideration as in the case at bar, and has declared itself unable to see anything against public policy in the transaction. It seems probable that the Supreme Court of Pennsylvania would decide in the same way, and it is hardly open to doubt that the same view would be taken in England. *Adams* v. *Adams*, 91 N. Y. 381. *Burkholder's appeal*, 105 Penn. St. 31, 37. *Newsome* v. *Newsome*, L. R. 2 P. & D. 306. *Jodrell* v. *Jodrell*, 9 Beav. 45, 56, 59, and cases *supra. Symons* v. *Burton*, Monro, Acta Cancellariæ, 266.

It seems to me that reason as well as authority is opposed to the decision. The actual return to cohabitation was perfectly

lawful, whatever the motive which induced it. I cannot think that it is unlawful to make a lawful act, which the wife may do or not do as she chooses, the consideration of a promise, merely because, by reaction, the making of the promise tends to mingle a worldly motive with whatever other motives the wife may have for renewing cohabitation. No one doubts that marriage is a sufficient consideration for a promise to pay money. Pub. Sts. c. 78, § 1, cl. 3. I do not quite understand why it should be more illegal to make such a promise for the resumption than for the assumption of conjugal relations.

I agree too to what is said in *Adams* v. *Adams, ubi supra.* The arrangements "tended to restore peace and harmony between husband and wife, and renew their conjugal relations. Agreements to separate have been regarded as against public policy, but it would be strangely inconsistent if the same policy should condemn agreements to restore marital relations after a temporary separation had taken place. While the law favors the settlement of controversies between all other persons, it would be a curious policy which should forbid husband and wife to compromise their differences, or preclude either from forgiving a wrong committed by the other."

I am authorized to say that Mr. Justice Charles Allen and Mr. Justice Knowlton concur in this opinion.