# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

## IN RE BELL'S ESTATE.

### No. 1611 (80 Pac. 615).

1. DOWER—RELINQUISHMENT UNDER AGREEMENT FOR DIVORCE—VALIDITY—PUBLIC POLICY.—Revised Statutes 1898, section 2826, provides that one-third in value of all the real estate possessed by a husband during the marriage, and to which his wife has made no relinquishment, shall be set apart to her as her property in fee simple if she survive. *Held*, that an instrument whereby a wife released her one-third interest for a sum of money on an understanding that the husband should apply for a divorce, and that the wife should make no defense thereto, was void as against public policy.[1]

2. SAME—EVIDENCE—SUFFICIENCY.—On an issue as to whether an instrument relinquishing a wife's one-third interest in her husband's real estate, given her by Revised Statutes 1898, section 2826, had been executed on an understanding that he should sue for divorce, and she should make no defense, evidence *held* to show that it was made on such an understanding.

3. SAME—CONTRACT—VALIDITY.—Where a wife did not know what property her husband had, and did not know the value of the same, a relinquishment by her of her one-third interest in his real estate, given her by Revised Statutes 1898, section 2826, in consideration of $225, where the actual value of his real estate was $7,000, was so inequitable as to render the transaction unenforceable.

(Decided April 10, 1905.)

APPEAL from District Court, Salt Lake County; W. C. Hall, Judge.

---

[1] Ulmer v. Palmer, 26 Utah 31, 72 Pac. 3, 61 L. R. A. 641, 99 Am. St. Rep. 820.

(1)

Judicial proceedings in the settlement of the estate of James Bell, deceased. From a decree granting to Ellen R. Quinn Bell, widow of deceased, a third in value of all the real estate of the estate, Franklin Bell, as executor, appeals.

AFFIRMED.

*Stewart & Stewart* for appellant.

*Le Grand Young,* and *O. W. Moyle* for respondent.

APPELLANT'S POINTS.

Section 2731 of the Revised Statutes of Utah 1898, provides: That a married man may will away all of his estate with the consent of his wife in writing. The relinquishment executed by Ellen R. Quinn Bell, respondent, on the 28th of May, 1900, was such a writing under section 2731, as would authorize the husband to will away all of his estate. The respondent intended and agreed and consented that the decedent might dispose of his property by will or otherwise, irrespective of any right that the respondent had or would have had prior to the execution of the relinquishment and separation and upon decedent's death. The wife may relinquish her interest in her husband's real property. (Revised Statutes of Utah 1898, sec. 2826.) A marriage contract may limit or determine succession. (Revised Statutes of Utah 1898, sec. 2828.)

The relinquishment executed by the respondent was in the nature of a marriage settlement or marriage contract and therefore would come within the provisions of section 2828.

There can be no doubt that that the relinquishment made by Ellen R. Quinn Bell was made in favor of James Bell or his estate. Relinquishment means the forsaking, abandoning or giving over a right. (Black's Law Dictionary; Bouvier's Law Dictionary.)

"Contracts between husband and wife, based upon her relinquishment of support and interest in her husband's estate, and separation, is valid and binding." (*Randall v. Randall,* 37 Mich. 563; *In re Noah,* 73 Cal. 583; *In re Noah,* 88 Cal.

468; *Winkersham v. Comerford,* 96 Cal. 433; *Phelps v. Phelps,* 72 Ill. 345; *Spiel's Appeal,* 107 Pa. St. 18; *Houghton v. Houghton,* 14 Ind. 506; *Weaver v. Weaver,* 109 Ill. 231; *Garbet v. Bowling,* 81 Mo. 214; *Tierman v. Buris,* 92 Pa. St. 248.)

The wife may convey and relinquish her inchoate right of dower and right to support direct to her husband. (*Blake v. Blake,* 7 Iowa 52; *Robertson v. Robertson,* 25 Iowa 350.)

Parol contracts of separation and relinquishment of the wife's support and interest in the estate of her husband are valid and binding and do not come within the statute of frauds. (*Houghton v. Houghton,* 14 Ind. 506.)

Deeds of separation are valid both in England and in this country. (*Wells v. Stout,* 9 Cal. 42.)

In this latter case the authorities in both countries are reviewed fully and the same doctrine is approved. (*Houston v. Dewey,* 3 Pa. St. 100; *Walker v. Walker,* 9 Wallace 743.)

The authorities are practically unanimous that an agreement of separation made in good faith and executed by the parties is valid and not against public policy. Post nuptial agreements of separation, wherein the wife relinquishes all her rights in the estate of her husband, both her dower interest and maintenance, or otherwise, when entered into in good faith, and where separation actually takes place, in accordance with such agreement, are valid, and the wife is not entitled to any aid of the court in an attempt to violate it. (*Garber v. Bowling,* 81 Mo. 214; *Pain v. Hollister,* 39 Mass. 144; *Dillinger's Appeal,* 35 Pa. St. 357.

Where it is claimed that the contract was entered into for the purpose of promoting a divorce and the contract is susceptible of two constructions, one legal and the other illegal, it should receive that interpretation which would support it and give validity to it. (*Paul v Paul,* 71 Ill. 671; Werner, sec. 114.) Where it is held that no technical form is necessary for the, relinquishment of dower. (*Jones v. Flemming,* 140 N. Y. 418; Werner, page 427, sec. 115.)

Particular attention is called to the case of *Daniel v. Benedict,* 97 Fed. Rep. 367. This case was decided by the Court of Appeals in this circuit in 1899, in which the questions in this case are involved, and in which the following questions

are considered. 1. As to the right of the wife to make contract with her husband. 2. The right to convey an expectancy. 3. The validity of separation agreements in general. 4. The alleged fraudulent inducements claimed to have been practiced on the wife. 5. Reasonableness and adequacy of the consideration.

We submit that the case of *Palmer v. Palmer,* 26 Utah 31, is not in point, the facts being entirely different.

### RESPONDENT'S POINTS.

The court found that the contract upon which appellant relies was based upon an illegal consideration and was void. That such a contract is illegal and void and neither party could acquire any interest under it is not subject to question in this State, our Supreme Court having so thoroughly and learnedly discussed this question in the case of *Palmer v. Palmer,* 26 Utah, 31, so many cases being referred to and considered that it is unnecessary to present more.

The facts in this case come exactly within the law of the Palmer case. But even if the contract did not provide for the procuring of a divorce, but was merely, as counsel for appellant contend, "a settlement of their marital property, relations, and obligations," appellant would be in no better condition, because even then the contract would be void, for certainly, as stated by the court in *Palmer v. Palmer,* and in the many cases considered in that opinion, the contract was "designed to facilitate the procurement of a divorce."

And even if this contract was supposed to be a contract for separation merely, and did not facilitate the procurement of a divorce, still it would be void, because where there has been no actual separation or no determination to separate, agreements for separation that are brought about by contract are against public policy and therefore void. (*Foote v. Nickerson,* 48 Atl. 1088; *Baum v. Baum,* 53 L. R. A. (Wis.) 652; 1 Bishop M. D. & S., 1260, 1312; *Collins v. Collins,* 93 Am. Dec. 606.)

It is one thing to agree on property rights after a separation is made, but an altogether different thing for a man and wife to enter into an agreement for future separation, as the

cases cited fully show. Now, in this case, there is nothing in the evidence to show that there would have been any separation whatever if this agreement had not been entered into.

It is the universal rule that when any such a contract is made, and it appears that the consideration is unequal to the interests conveyed, the burden is cast upon the parties claiming the enforcement of the contract to show the fairness of it; and particularly in these settlements between husband and wife the courts require that where there is an inequality shown in the consideration, the party claiming shall show the fairness of it. (*Taylor v. Taylor*, 33 N. E. 532; *Kline v. Kline*, 57 Pa. St. 120; *Achilles v. Achilles*, 37 N. E. 693; *Pierce v. Pierce*, 71 N. Y. 154; *Ireland v. Ireland*, 12 Atl. [N. J. E. ] 184.)

Even if the written agreement were not otherwise invalid, it could not be enforced for the uncertainty of the instrument; that is, it is not and cannot be determined from the instrument, and for that matter, from any other source, who is to receive the benefits of the instrument or to whom the so-called release was made. It is also uncertain as to what is attempted to be released. There is, in fact, no grantee, and the mere fact that the instrument recites that the consideration came from James Bell does not make him the grantee and parol evidence is not admissible to prove that he was the grantee. (*Allen v. Allen*, 51 N. W. 473; *Morris et al. v. Stevens et al.*, 46 Pa. St. 200.)

A deed to the estate of a person is void. (*Simmons v. Spratt*, 1 So. 860; *McInerney v. Beck*, 39 Pac. 130.)

A deed to the heirs of a living man is void. (*Winslow et al. v. Winslow et al.*, 52 Ind. 8; *Morris v. Stephens*, 46 Pa. St. 200; *Hall v. Leonard*, 1 Pick. 27; 3 Washburn on Real Property, p. 240, sec. 33.)

In *Winslow v. Winslow, supra,* the court says: "A deed made to the heirs of a living person named therein without giving the names of the heirs is void."

Again, if the instrument could be construed to refer to James Bell as grantee in his lifetime, the interest that respondent was attempting to convey would at once re-attach under the statute, and at the time of his death she would still be the

owner of the one-third interest. (*Wightman v. Schleifer*, 18 N. Y. Supp. 551.)

STRAUP, J.

Appellant, the executor of the estate of James Bell, deceased, prosecutes this appeal from a judgment of the court below decreeing to respondent, as the widow of said deceased, one-third in value of all the real property of said deceased possessed by him at the time of his death. Appellant, as executor of said estate, filed his final account and petition for distribution with the court below, asking that the real estate of said deceased be distributed to his children in accordance with his last will and testament, wherein all his property, real, personal, and mixed, was bequeathed and devised to them. To this petition the respondent filed objections, and petitioned that she be decreed in value one-third of the real property of said deceased.

The principal issue in the case was, as claimed upon the part of the executor, the respondent had in the lifetime of said deceased relinquished all her right, title, and interest in and to his property, and in and to all the property of the estate, which was denied by said respondent, and further alleged and asserted by her that the said so-called relinquishment, under circumstances and conditions alleged, was against public policy and void, was unjust and inequitable, and not founded upon a good or sufficient consideration. The case was tried before the court, and the substance of so much of the findings material here is as follows:

That said deceased and respondent married in May, 1898, and lived together until the 28th day of May, 1900, but from that time on lived separate and apart until the death of said deceased in October, 1900. Soon after said marriage the deceased frequently became intoxicated to such an extent that at times he was incapacitated from performing labor, and when under the influence of liquor he was disagreeable in his habits and much irritated, and by speech and conduct was offensive to respondent. That she was not aware at the time of her marriage that deceased was addicted to the use of liquor. That said executor, who was a son of deceased, and other children of said deceased (all adults, some married and

some single), were desirous of disinheriting respondent when-ever the death of the said deceased should occur, and that they did unlawfully and without cause ask her to leave the home of their father, asserting that it was not large enough for all to live in, and in every way made it disagreeable for her to live with said deceased, and illegally combined together to procure some method by which she would sign some instru-ment releasing her interest in and to the estate of said de-ceased, and forcing her away from his home. That while the said children were so conducting themselves, and on or about the 28th day of May, 1900, and at a time when the said de-ceased was very sick, the said children so continued in their said conduct, and requested the respondent to leave her said home, and stated that her presence there caused a bad spirit and that it was better for her to leave her said home and the home of said deceased. That respondent, being affected by said influences, was herself made sick and worried, and was uncertain as to what should be done, and was finally per-suaded "to move from the home of said deceased and live sep-arate and apart from him, and to agree to permit said de-ceased to bring suit for divorce against his said wife, and it was then and there agreed by and between said deceased and the wife of said deceased that said deceased should bring a suit for divorce against his said wife, and that she would not make any defense to his said suit for divorce, and would not demand any alimony, and that, in consideration of her so agreeing, she would and did receive $225 in cash, and under said conditions, and not otherwise, signed and executed the following agreement or memorandum in writing: 'Mill Creek, May 28, 1900. For and in consideration of $225, two hundred and twenty-five dollars, to me in hand paid by James Bell, the receipt of which is hereby acknowledged, I, Ellen R. Quinn Bell, have this day relinquished all claim forever after to the estate of James Bell, and that I, Ellen R. Quinn Bell, further agree to give up all claim of support, by James Bell forever after. (Signed) Ellen R. Quinn Bell.' " This was subscribed and sworn to before George Taylor, a notary pub-lic, and witnessed by James C. Hamilton. "That it was dis-tinctly understood and agreed by and between said deceased and his said wife at said time and place, and that it was a

part of the consideration for the signing of said paper, that said deceased should procure a divorce as soon as he was able to do so from said Ellen R. Quinn Bell, and that she would not defend, and that she would not demand any alimony, and that said paper was so signed with that understanding." That, at the time the said paper was signed, respondent did not know what property said deceased then owned, and did not know the value of the same. That the respondent would not have signed the said paper, and would not have left the home of deceased, if it had not been for his habitual drunkenness and the actions of his children. That the said deceased then owned and was possessed of real estate in the county of Salt Lake, where the said parties resided, of the value of not less than $7,000, and that the payment to her of $225 was wholly inadequate and inequitable for her interest in and to the said real estate of the said deceased. That, long before the death of the said deceased, respondent had used all of the said $225 for her support and maintenance. That on said 28th day of May, 1900, the said deceased made his last will and testament, whereby he bequeathed and devised all his estate, real, personal, and mixed, to his children, and in his said will recited: "I have this day given and advanced to my beloved wife, Ellen R. Quinn Bell, the sum of $225, her share in full out of my estate, in consideration that said Ellen R. Quinn Bell should relinquish all her claims against my said estate by virtue of being my wife or otherwise, said Ellen R. Quinn Bell shall take nothing further under this will." That the said respondent refused to accept the provision made for her in the will, but rejected the same.

The statute in force here applicable (so much as is material of section 2826, Revised Statutes 1898) reads:

> "One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, and to which his wife has made no relinquishment of her rights, shall·be set apart to her as her property in fee simple if she survive him."

The property distributed under the provisions of this section shall be free from all debts of the decedent, except cer-

tain liens not necessary here to mention, and taxes. Section 2827 provides:

"If the husband shall make any provision by will for the widow, such provision shall be construed to be in lieu of the distributive share secured by the next preceding section, unless it shall appear from the will that the decedent designed the testamentary provision to be additional to such distributive share, in which case the widow shall be presumed to have accepted both such testamentary provision and such distributive share. If, however, it does not appear from the will that its provision for the widow is additional, then the widow shall be conclusively presumed to have renounced such provision, and to have accepted her distributive share, unless within four months after the admission of the will to probate, or within such additional time before distribution as the court may allow, she shall, by written instrument filed with the clerk of the court, accept the testamentary provision, which acceptance shall be construed to be a renunciation of her distributive share."

The trial court held said agreement of respondent void as being against public policy, and as being unjust and inequitable, and not founded upon a sufficient or legal consideration, and decreed to respondent one-third in value of all the real property of the said deceased, as by the statute above provided.

1. Appellant claims that the findings of the court that the deceased was addicted to the excessive use of intoxicants, that his children mistreated respondent, that the said agreement was made in furtherance of divorce proceedings, and that the value of the real estate of said deceased was not less than $7,000 are not supported by the evidence. And to the contrary, appellant asserts that the respondent herself sought the settlement, and left the home of the deceased of her own accord and free will, and that the said writing executed by her constituted a complete relinquishment of all her right in and to the real estate of the said deceased, and of

and to any claim in and to his estate, and that the said writing was made freely by her, and with knowledge of all the facts, and that the said real estate of the said deceased was of no greater value than $3,500. The law is well settled that such an agreement as here made, under conditions as found by the court—in furtherance of the deceased bringing a suit for divorce, and that the respondent should not make any defense thereto and would not demand any alimony—is void, as being against public policy. · (*Palmer v. Palmer,* 26 Utah 31, 72 Pac. 3, 61 L. R. A. 641, 99 Am. St. Rep. 820, and cases there cited.)   We have not been cited to any case holding or to any law declaring such an agreement valid, when made under such circumstances and upon such conditions as here found by the court.

2.   The only remaining question, therefore, is, are the findings supported by the evidence ?  If the said agreement or so-called relinquishment was made upon the condition or understanding that the deceased should apply for a divorce, and that the respondent should make no defense thereto, then we cannot see how it is material whether the deceased was given to excessive drinking of intoxicants, or whether the respondent did or did not have cause for leaving her home.   For the law does not declare that public policy permits the making of that kind of an agreement, under the conditions as found by the court, when one of the parties in marriage has cause for divorce, but precludes it only when there is no such cause, or when they have dealt unjustly or inequitably with each other.   If, therefore, this main finding, that the said agreement was made upon the said conditions, is supported by the evidence, all these other matters become insignificant. On this subject-matter plaintiff testified as to what was said just before the agreement was made and at the time of its being made:

"What was said about the divorce was said at Mr. Bell's bedside.  I was taken into the room with the paper, and I believe it was Mr. Hamilton had the paper.  I sat on this side of the bed, and Mr. Bell lay there; and it was said that, if Mr. Bell got well, he could get a divorce, and I was not to appear

against him; neither was I to ask for any of his property."

Mr. Hamilton, the principal witness for the appellant, on this matter testified as to what took place just before the paper was signed:

"It was distinctly understood that she (respondent) was to leave; that she was no more his wife; from that time she would live apart from Mr. Bell (the deceased), and, if Mr. Bell lived, he was to go and apply to the court for a divorce and pay the costs; that she would not appear. That was the understanding. That was the agreement—that Mr. Bell, if he lived, was to apply for a divorce, and he would stand all the costs, and she would not appear."

At another place in his testimony upon this same matter he stated:

"Mr. Bell stated that if he lived he would see about a divorce, or something of that kind, and she spoke up and said that she wouldn't oppose it; that he could have a divorce at any time if he lived; that she was not to get any property when the divorce was procured. She said she wouldn't appear against him. This was agreed to by both of the parties, and it was talked over by both of them, and plainly understood by both of them. And that was one of the reasons why the $225 was given her—because, in the case he lived and got a divorce, she would not get anything."

It is therefore clear that there was sufficient evidence to support this finding of the court. It is true that the executor and one or two other witnesses testified that there was nothing said relative to a divorce. But this court has so often expressed itself as to the rule of conflicting evidence before the trial court and as to the weight of evidence that we need not here again do so. (*Gorringe v. Read,* 24 Utah 452, 68 Pac. 147; *Miller v. Livingston,* 22 Utah 174, 61 Pac. 569, and cases cited.)

3.   Much evidence was given on both sides with respect to the fault of the deceased and of respondent, out of which their differences arose, about which the evidence also conflicted.   There is sufficient evidence to support the finding of the court that the deceased was given to the excessive use of intoxicants, and when under its influence he was disagreeable and offensive in conduct and in speech to respondent, and that she was also mistreated by his children, and that they combined to procure the deceased to disinherit her.   All that can be said of these findings is that the evidence in respect thereto was conflicting.   As to the finding that the deceased was the owner 'and possessed of real estate to the value of at least $7,000, there is not even much conflict in the evidence.   About all the evidence we find in opposition to it is that of the testimony of the executor, who said it was worth only $3,000. But in his verified petition for appointment he stated it was worth $7,000.

4.   Appellant has cited cases to the point that when separation has actually taken place—and a few when not actually taken place, but fully decided upon—public policy does not preclude the married parties from making an equitable and suitable division of the property, and provisions for support and maintenance of the wife, and that such agreements will be upheld, if they are fair and equitable, and are not the result of fraud or coercion.   But in view of the finding of the court, it may well here be said, as was said by the court in the Palmer Case:

> "Is it not idle to say or contend  .  .  .   that this is a mere contract for separation, and cannot be construed into a contract to facilitate a divorce?  .  .  .   They (the parties) in effect stipulate that all their marital  responsibilities shall be forever ended.   It is difficult to see by what process of reasoning such a contract can be construed to be anything less than an agreement to facilitate a divorce, or an attempt to put an end to the marriage status by mutual agreement of the parties.  .  .  .   A contract which is designed to facilitate the procurement of a divorce, to put an end to the  marriage

status, and absolve the parties from all their marital obligations imposed upon them by the law of matrimony, cannot be enforced."

And furthermore the payment to respondent of $225 for her release of one-third in fee in and to real estate of the value of $7,000 is so inadequate as to render the transaction unfair, and, in view of the facts as found by the court, it would be inequitable to enforce it.

The judgment of the court below is therefore affirmed, with costs.

McCARTY, J., concurs; BARTCH, C. J., concurs in the judgment.