FRANK F. CAMPBELL, As Executor of the Estate of Nellie Campbell Prater, Deceased,

*Plaintiff and Appellant,*

vs.

L. R. PRATER,

*Defendant and Respondent.*

FRANK F. CAMPBELL, as Executor of the Estate of Nellie Campbell Prater, Deceased,

*Plaintiff and Respondent,*

vs.

L. R. PRATER,

*Defendant and Appellant.*

(Nos. 2553 and 2354; March 16th, 1948; 191 Pac. 2d. 160)

294

For the plaintiff and Appellant in Case No. 2353 and Plaintiff and Respondent in Case No. 2354, the causes were submitted upon the brief of Mr. R. E. McNally of Sheridan, Wyoming.

For the Defendant and Respondent in Case No. 2353 and Defendant and Appellant in Case No. 2354, the

causes were submitted upon the brief of R. G. Diefenderfer of Sheridan, Wyoming.

300

OPINION

KIMBALL, Justice.

The case requires a decision as to the binding effect of the postnuptial promise of a husband to waive and relinquish his "optional" right as surviving spouse under a statute, now § 6-301, C. S. 1945, formerly § 6667, C. S. 1920, § 88-101 R. S. 1931.

Plaintiff is the executor of the will of Nellie Campbell Prater, who died in 1945; defendant is the surviving husband of the testatrix. The will deprives the husband of more than one-half of the wife's property. The testatrix is not survived by any child. The statute, cited above, by an amendment of 1915, provides that in such a case "it shall be optional with the surviving spouse after the death of the * * * testatrix to accept the condition of the will or one-half of the estate, real and personal, of the deceased spouse." Defendant seeks to exercise this option by electing to take one-half of the estate, and has filed in the probate proceedings the writing required by the statute to signify that election.

Thereafter, plaintiff brought this action for a declaration of rights under the Uniform Declaratory Judgments Act, claiming that defendant is barred from making such election by his promise not to do so. The promise was made in a transaction evidenced by a writ-

ing, called "Memorandum of Agreement," signed by the husband and wife March 11, 1931.

Defendant in his answer admits that he signed the writing, but alleges that it is void or unenforceable for want of consideration; because he was induced to sign it by coercion, and because the bargain shown by the writing is inequitable. The answer also raises the question whether the writing should be construed as a release or waiver of defendant's right to exemptions allowed by law to a surviving spouse, under section 6-1504, C. S. 1945.

The judgment is favorable to plaintiff in declaring that the agreement shown by the writing of March, 1931, is valid, and prevents defendant from electing to take one-half of the property under section 6-301, supra. It is favorable to defendant in declaring that the agreement does not prevent him from receiving in the probate proceedings all the exemptions allowed by law. Both parties have appealed, each complaining of the part of the judgment favorable to the other.

We consider, first, the appeal by defendant who contends that undisputed evidence requires a finding that his promise shown by the writing of March, 1931, is unenforceable for reasons alleged in his answer.

There is no conflicting evidence. The facts are shown by admissions in the pleading and by exhibits. Statements in papers filed in the probate proceedings indicate that in March, 1931, when the writing in question was signed, the wife was about 52 years of age, the husband about 46. The petition alleges and the answer admits that the relationship of husband and wife existed "long prior to March 11, 1931," and continued until the death of the wife. Assessment schedules for the year 1931 show that the assessed valuation of the wife's real property was about $37,000. The only listed

personal property was valued at $300. In the probate proceedings the estate property (including personal property of the value of $18,000) has been appraised at $54,200. There is no evidence to show the value of the husband's property in 1931, or at any other time, but the briefs of both parties contain arguments based on the assumption that when the wife died in 1945, the husband had property of the value of $45,000 accumulated in the business of ranching.

The record discloses no other facts tending to show the surrounding circumstances and situation of the parties at the time the writing of March, 1931 was signed, except as recited in the writing itself which, as the parties agree, is self-explanatory.

The Memorandum of Agreement, after naming the husband as first party and the wife as second party, reads as follows:

"WHEREAS, the parties to this agreement are husband and wife, and a misunderstanding and disagreement has arisen between them with reference to their respective property interests and property rights and particularly with reference to the testamentary disposition which second party desires to make of the separate estate which she possessed at the time of their marriage, and to which first party has in no way contributed, it being the desire of the second party to devise and bequeath to the first party less than one half of her separate estate; and,

"WHEREAS, in consequence of said misunderstanding and disagreement the parties hereto have separated and are now living separate and apart from each other, and it is the desire and purpose of the first party to induce the second party to return to him, and it is the mutual desire of both parties to this agreement that a full and complete understanding be reached, and that

an agreement be made between them as to their respective property rights and as to the testamentary disposition which the second party proposes to make of her separate property;

"NOW, THEREFORE, in consideration of the premises, and of the mutual promises, covenants, and agreements of the parties hereto, hereinafter contained, it is now and hereby agreed by and between said parties as follows:

"That, for and in consideration of the sum of $100.00, to him in hand this day paid by the second party, receipt whereof is hereby confessed and acknowledged, and, for and in consideration of the further promises, covenants, and agreements of the party of the second part, hereinafter contained, the party of the first part hereby expressly and specifically waives and forever relinquishes the optional right which is given him as surviving spouse, under Section 6667, Wyoming Compiled Statutes, 1920, to take one-half of the estate, real and personal, of the second party, in the event of her death, and the first party hereby agrees to accept and to receive from and out of the estate of the second party, in the event of her death, such portion of her separate estate as may be devised and given to him by and under the terms of the last will and testament of second party, and first party further agrees that second party shall have the right at any time hereafter to make a last will and testament, devising and bequeathing all property of which she may die seized and possessed in such manner as she may see fit, and first party further agrees that he will not contest nor object to any term or provision contained in second party's last will and testament, either before or after probate.

"That it is expressly and specifically understood and agreed that if hereafter a divorce be granted to either

of the parties hereto, then and in that case, neither of the parties hereto shall thereafter have any right, title, interest, or claim in, to, upon, or against the estate of the other, but that such divorce shall forever terminate any and all rights and claims which either may have against the estate of the other, in the event of death.

"That second party shall at all times hereafter have and retain her full rights in the estate and property of the first party under any and all circumstances, and, in the event of the death of the first party, or otherwise, the second party shall have the benefit of all statutory provisions relating to the rights and claims of a surviving spouse.

"That the second party will make a last will and testament, in which she will give and devise the property and estate of which she is seized and possessed at the time of her death, in such manner as she may see fit.

"That upon the execution of this agreement and as a part of the consideration moving from the second party to the first party hereunder, second party will return to the home of first party and resume the marital relation in all respects.

"That the parties hereto, upon the execution of this instrument, will resume the marital relation and will live and work together as heretofore upon said ranch; that first party will have charge and control of the livestock and general ranching operations, and that the second party may, if she chooses to do so, have charge and control of the poultry and of the disposition and sale of poultry and dairy products; that an annual rental, to be agreed upon between first party and Frank F. Campbell, will be paid by first party for the use and occupancy of said ranch; that second party will not commingle ranch receipts with her income

from her separate estate, but that in all respects the affairs and business of the parties hereto as husband and wife shall be carried on and conducted as though the second party had no separate estate.

"That in the event the parties hereto are unable to live happily and in a congenial manner together, and a separation or divorce results, there shall be an equitable division made between them of the property which has been accumulated by their joint efforts, and the first party will not make any demand nor receive any interest on account of the separate estate of the second party aforesaid, but any settlement between the parties shall relate solely to the property accumulated as the result of their joint efforts.

"That the parties hereto will henceforth endeavor seriously and in good faith to live together as man and wife, and will continue their ranching and livestock operations with the determination and the hope that no further difficulties of a serious nature will arise between them."

Material facts stated in the writing, or necessarily inferred therefrom, may be summarized briefly. The husband and wife had become separated when the wife voluntarily left the home. The cause of her leaving was a disagreement in regard to the property rights, particularly with reference to the desire of the wife to make a will that would effectively deprive her surviving husband of more than one-half of her property, notwithstanding the optional right of the husband under the statute. There is no hint of any other cause of separation.

It was the desire and purpose of the husband to induce the wife to return to him, and the promise of the wife to return to the home and "resume the marital relation in all respects" was all that the husband obtained

by the agreement except possibly the recited money consideration of $100. Defendant offered to testify that the money was not in fact paid, but on plaintiff's objection, he was rejected as an incompetent witness under our dead man's statute, section 3-2603, C. S. 1945. Plaintiff asserts that the writing shows that there were other considerations for the husband's promises, but we cannot see that the wife agreed to do anything that was not covered by her promise to return to the home and resume the marital relation.

The wife, as a consideration for her promise to return, exacted among other things, the promise of the husband to waive and relinquish his right as surviving spouse under section 6-301, supra. She retained her correlative right under the same statute, and was careful not to surrender any interest she might have in her own or her husband's property during marriage, upon future separation or divorce, or after the husband's death.

There was no testimony to show what happened between the husband and wife after the signing of the above writing on March 11, 1931. Plaintiff did not allege or prove that the wife performed her promise to return to the home, and the brief of defendant contains the statement that there is nothing in the record to show that she did return. We think, however, that the fact that the wife did return to the home following the signing of the writing was not in dispute. Defendant in his answer alleged that the wife left the home because he had refused to release all his rights in her property, and that she "refused to return until this defendant yielded to her demands" by signing the writing. This evidently means that the wife did not refuse to return after the writing was signed. See Herrin v. National Fire Ins. Co., 46 Wyo. 330, 339, 26 P. 2d 637, 639. In other pleadings in the same action there is an-

other admission of the wife's return. The plaintiff's petition contained originally two counts or causes of action, the first for a declaratory judgment, as stated above. In the second cause of action, plaintiff alleged that immediately after March 11, 1931, the wife returned to the home where she thereafter lived and performed her duties as wife until September, 1939. This was admitted by defendant in his answer to that cause of action. During the trial plaintiff dismissed the second cause of action, and the pleadings therein were not offered in evidence. They were, however, before the trial judge, are contained in the record on appeal, and we think we may assume that the wife did return to the home as therein alleged and admitted.

The will made in March, 1939, devises to the husband specific real property of the appraised value of $8,320. The other beneficiaries under the will, are the testatrix's brother, his wife and children.

The wife's promise to return to the husband and resume marital relations was not a sufficient consideration for the husband's promises, unless she had just cause for leaving him. Kesler's Estate, 143 Pa. 386, 22 Atl. 892, 13 L. R. A. 581, 24 Am. St. Rep. 557; Litwin v. Litwin, 375 Ill. 90, 30 N. E. (2d) 619; Bowers vs. Alexandria Bank, 75 Ind. App. 345, 130 N. E. 808. These cases and many others are cited in note on "Resumption of Marital Relations as Consideration" (149 A. L. R. 1015, 1016) in support of the principle that an agreement to resume marital relations made by one spouse who has deserted the other without just cause is not a consideration for an exchange promise. See, also, Restatement of Contracts, § 76, Illustration 1; Williston on Contracts, §§ 133, 1744. Williston, at § 1744, says: "There seems to be no reason why a bargain to resume marital relations where one of the parties has just cause for divorce should not be sus-

tained, and it is generally held that a promise made in consideration of such resumption and of the dismissal or forbearance to bring justified proceedings for divorce, or in compromise of legal proceedings for nonsupport, is binding.

"On the other hand, if there is no justification for divorce or separation, a bargain to continue or resume marital relations is certainly insufficient consideration and is probably also unenforceable on grounds of policy."

The last quoted paragraph is applicable to the facts in this case. We hold that a disagreement in regard to property interests is not just cause for a wife leaving her husband, especially when it appears, as in the case at bar, that the principal disagreement arose when the wife insisted on a right she did not have under the law.

Counsel for plaintiff boldly contends that the wife was under no legal or moral duty to live with the husband; she had the right to abandon the contract of marriage, and the transaction of March, 1931, was a "brand new deal * * * like a new marriage." We cannot agree.

Marriage is a contract that establishes a status or relation to which are attached various rights and obligations that cannot be changed by the mere will or whim of the parties. Schouler on Marriage etc. (6th Ed.) § 13; Lush on Husband and Wife (4th Ed.) 31; Goldman v. Goldman, 282 N. Y. 296, 26 N. E. (2d) 265; Closson v. Closson, 30 Wyo. 1, 8, 215 P. 485, 29 A. L. R. 1371. The parties are mutually entitled to the right of cohabitation. This is a fundamental right essential to the marriage state, although it cannot be enforced by any legal process. See Madden on Domestic Relations, 148; Eversley on Domestic Relations (2d Ed.) 174; Schouler, supra, § 37; 41 C. J. S. Husband and Wife,

§§ 11, 12; 26 Am. Jur. Husband and Wife, §§ 6, 7, 11.

The duty of the wife to live with her husband is not modified by anything contained in our Married Women's Act, now section 50-201, et seq., C. S. 1945, enacted "to protect married women in their separate property and the enjoyment of the fruits of their labor". See title of the act, Laws of 1869, ch. 19. See, also, discussion in Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643.

A wife may be justified in leaving her husband and living apart from him; but if she has no just cause for leaving, her action is wrongful. See Brown v. Brown, 23 Wyo. 1, 11, 140 P. 231; Davis v. Davis, 56 Wyo. 524, 531, 111 P. (2d) 124, 138 A. L. R. 336. We have not found, and probably should not expect to find, any case holding that a disagreement in regard to property interests is a just cause for one spouse leaving the other. Kesler's Estate, supra, points the other way. There the wife had left the husband because of her dissatisfaction with a valid antenuptial contract, and the court held that it was her duty to return, saying that "public policy forbids that the performance of such duty be made the subject of barter and sale."

Although the wife's return to the home was not a consideration, plaintiff contends that the bargain is binding on the husband by reason of his receipt of $100. We assume that this payment of money was made as recited in the writing; that it made the bargain binding, so far as consideration is concerned, and that its adequacy is not a matter of judicial inquiry except on the issue of coercion, to which we now come.

The courts, referring to bargains like that in the case at bar, frequently state not only that the promise to continue or resume marital relations is insufficient consideration, but also that the bargain is invalid or unen-

forceable or grounds of public policy. The language condemning the bargains on grounds of policy is usually terse and positive. "I do not know how far a husband would be morally bound by a postnuptial contract in which he hires his wife to live with him; but the legal obligation cannot be recognized in this court." Justice Walker in Roberts v. Frisby, 38 Tex. 219. "The undertaking contravenes public policy, is promotive of separation of husband and wife, and not tolerable in law." Copeland v. Boaz, 9 Baxt. (Tenn.) 223, 40 Am. Rep. 89. "It is as much against public policy to restore interrupted conjugal relations for money as it is to continue them without interruption for the same consideration." Merrill v. Peaslee, 146 Mass. 460, 16 N. E. 271, 4 Am. St. Rep. 334. "The performance of marital duty should not be the subject of bargain and sale." Rodgers v. Rodgers, 229 N. Y. 255, 128 N. E. 117, 11 A. L. R. 274. The law seeking to regulate the marriage relation for the welfare of the state will not allow a married person to discard the relation and renew it for money. Young v. Cockman, 182 Md. 246, 34 A. (2d) 428, 149 A. L. R. 1006. See, also, Kesler's Estate, supra, and cases in Note, 73 A. L. R. 1518.

On the other hand, in cases considering bargains for return of a wife who has left her husband for just cause, it is often explained that the law favors the reconciliation of husband and wife, and that a contract for re-establishment of the home is one which equity is swift to approve. See Phillips vs. Meyers, 82 Ill. 67, 25 Am. Rep. 295; Adams v. Adams, 91 N. Y. 381, 43 Am. Rep. 675; dissenting opinion in Merrill v. Peaslee, supra; Woodruff v. Woodruff, 121 Ky. 784, 789, 90 S. W. 266, 268; Duffy v. White, 115 Mich. 264, 73 N. W. 363. The Restatement of Contracts, § 585, declares: "A bargain between married persons who have separ-

ated or been divorced, or who contemplate separation or divorce, for reconciliation, is not illegal."

When the courts say that bargains like that in the case at bar are against public policy, they do not mean that the wife in promising to return to her husband, or in performing that promise, does anything contrary to law or public opinion. What they mean is that it is contrary to public policy for a wife, who has left her husband without just cause, to exact a consideration for her return. It has been said that "Just as a contract may be invalid because it is contrary to public policy in its substance and purposes, so it may be invalid because it is contrary to public policy in respect of the coercive method of its procurement." Salmond on Contracts (1947 ed.) 286, quoted from an earlier edition in Mutual Finance v. John Wetton & Sons, (1937) 2 K. B. 389. See, also, Restatement of Contracts, § 578.

In the cases above referred to, in which it is stated or intimated that a bargain is contrary to public policy if the consideration moving from the wife is her promise to continue or resume cohabitation, there is nothing to show that such promise was not the sole consideration. When there is some additional consideration (in this case, $100.) other questions arise. See Rest. Contracts, § 585, Comment a; Terkelsen v. Peterson, 216 Mass. 531, 104 N. E. 351; Oates v. Oates, 127 W. Va. 469, 476, 33 S. E. (2d) 457, 460. If the lack of consideration is the only ground of attack, the additional consideration, though merely nominal, may be legally sufficient. But that is not so if the bargain is voidable on the ground of fraud, duress or undue influence. Oates v. Oates, supra. We have in this case the issue in regard to coercion, a word which we assume may mean either duress exercised by a threat of wrongful conduct, or undue influence existing when the dominating party procures a bargain by unfair persuasion.

In this case, as explained above, the wife in leaving the husband had deprived him of the most important personal right to which he was entitled as an incident of the marriage contract. It is necessarily implied that she threatened to continue the separation unless the husband signed the writing of March, 1931. See Rest. Contracts, § 492, Comment d. He was forced to choose between alternatives, either to endure the separation, or sign the agreement. The wife obtained the agreement by creating a motive from which the husband ought to have been free, and which was intended to be, and in fact was, sufficient to produce the result. See Silsbee v. Webber, 171 Mass. 378, 380, 50 N. E. 555, 560.

In what are sometimes called "hold-up" cases, the usual statement is that a threat to break a contract does not in itself constitute duress. This is on the ground that there is an adequate legal remedy for the breach; if there is no such remedy, the coercive effect of the threatened action may be inferred. Hartsville Mill v. United States, 271 U. S. 43, 49; Williston, supra, § 1620. Marriage differs in several respects from the ordinary civil contract, and of course there is no claim that a husband can sue his wife for damages caused by her refusal to live with him. His only remedy is to sue for divorce, a procedure which the courts do not encourage.

It is said that if a husband induces his wife to enter into a contract by representing that otherwise he will desert her, there is undue influence (Rest. Contracts § 497, Ills. 3) or duress (17 Am. Jur. 890). In a note, Ann. Cas. 1917A, 174, it is said: "As a general rule a threat of abandonment by a spouse constitutes duress," but in the cited cases that support the statement the husband had threatened to abandon the wife. We have found no case, and ours is not a case, of a mere threat of

a wife to desert her husband. She had deserted him and, at least by implication, was threatening to continue the desertion unless she obtained the consideration she exacted in exchange for her promise to return.

Other matters are important as tending to support the claim of coercion. The writing in question recites a one-sided agreement. A reading of it is all that is needed to demonstrate that its terms were dictated by the wife who in the transaction was able to assume the dominant position because of her willingness to leave her husband and his desire to induce her to return.

Plaintiff argues that $100 is an adequate consideration for an expectancy that would not ripen into a property right unless the husband outlived the wife, and she in the meantime had not lost or given away her property. The expectancy of a prospective heir is subject to the same hazards and also to the risk of disinheritance. We do not know how the value of such a right can be proved, but the cases indicate that a money consideration for the relinquishment or assignment of the right will be deemed inadequate when the proportionate discrepancy between the amount paid and the value of the property to which the expectancy relates is much less than in the case at bar where $100 was given for the release of a right to inherit property assumed to have been worth at that time $18,500.

In a case of an assignment by an expectant heir, it was held that the consideration to be adequate should be the full value of the property estimated as if the estate were absolute and fully vested, and without regard to the uncertain nature of the expectant interest. McClure v. Raben, 125 Ind. 139, 146, 148, 25 N. E. 179, 181, 182, 9 L. R. A. 477, 480, 481. We need not go that far in this case.

In the following cases the consideration, which we

state first, was deemed inadequate for the relinquishment of an expectancy relating to property of the value, stated second: $225 for $2,333, Bell's Estate, 29 Utah 1, 80 P. 615; $435 for $3,000, Richie v. Richie, 189 Ia. 1300, 179 N. W. 830; $15,000 for $45,000, Redwine's Executor v. Redwine, 160 Ky. 282, 169 S. W. 864, Ann. Cas. 1917A, 58.

We hold that the money consideration was inadequate, and that the whole of the undisputed evidence requires a finding that the agreement in question is voidable for coercion.

Plaintiff argues that defendant should be denied relief on some principle of laches, ratification or estoppel, though there is nothing in the pleadings or evidence to show that these questions were raised in the trial court. The only pertinent fact shown by evidence is the long time that elapsed between the signing of the agreement and the death of the wife. If we assume that the husband during that time did not complain that the agreement was procured by coercion, we think the explanation is given in plaintiff's brief in which it is asserted that: "He (defendant) ought not to be permitted now to make a claim *which he did not dare to make in the lifetime of his deceased spouse.*" Where a transaction is voidable for coercion, the power of avoidance is not lost while the circumstances that rendered the transaction voidable continue to exist. Rest. Contracts § 499 (2). No acts can constitute ratification which were done while the fear of undue influence, which operated to induce the original transaction, is still effective. Williston, supra, § 1626. After the husband had signed the agreement for the purpose of inducing his wife to return to him, it would be unreasonable to suppose that he would take any action that would invite another separation. See Union National Bank v. Wright, 79 Colo. 574, 247 P. 453; Vicknair v. Trosclair,

45 La. Ann. 373, 12 So. 486. Courts are reluctant to attribute laches to a husband or wife when action would disturb the family relation. Bennett v. Finnegan, 72 N. J. Eq. 155, 65 Atl. 239. Connar v. Leach, 84 Md. 571, 36 Atl. 591; Fawcett v. Fawcett, 85 Wis. 332, 55 N. W. 405.

The suggested prejudice to the wife is that she was lulled into a sense of having freed herself from the statutory restraint on her power to disinherit her husband, and that, if she had been informed of the husband's intention to question the agreement, she would have rendered the statute inoperative by getting rid of her property in her lifetime.

We do not think this is a good ground for claiming estoppel or ratification. It is true that the wife in her lifetime could have transferred her property to others without her husband's consent, but it may be doubted that she had the right to do so for the purpose of nullifying the statute by a transaction that would have permitted her to continue in the control and enjoyment of the property during her life. See Notes, 64 A. L. R. 466, 112 id. 649, 157 id. 1184. With limitations suggested in the cases, which show some diversity of opinion, one spouse has the power to make a gift that will prevent the survivor from inheriting under statutes like ours, but we think the mere existence of that power should not be a ground for preventing a promisor from questioning a voidable agreement procured for the purpose of permitting a spouse to make a testamentary disposition of property in disregard of the statute.

We have seen but two cases in which a like question was considered. Kreiser's Appeal, 69 Pa. 194 and Redwine's Ex'r. v. Redwine, supra. The facts material on the question were similar. In each case a wife had by statute the right of choice whether to take under the

husband's will or to take a distributive share of his property. Before the husband's death the wife had agreed to take under a will leaving her less than her distributive share. After the husband's death the wife elected to take her distributive share, and the executor invoked the doctrine of estoppel. Remarks of the court on that question in Kreiser's Appeal, supra, at p. 200, may be paraphrased thus: "It has been suggested that possibly the husband might otherwise have given the property to children during his lifetime, and have thus cut his wife out; but there is no evidence that he so threatened or attempted, and if he had it would have been an endeavor to deprive his wife of her distributive share without consideration. We have no right to infer that the husband intended to deprive the wife of that secured to her by the law of the land by giving away his property."

In Redwine's Ex'r. v. Redwine, supra, the executor pleaded, among other things, that the wife by her agreement to accept the property willed to her in lieu of her claims against her husband's estate, induced the husband to believe that she would be satisfied therewith as her distributable share of his estate, and prevented him from giving the property absolutely to his children in his lifetime, which he would have done but for her agreement. The court, in holding that the plea stated no ground of estoppel, said: "It is further said that the widow was estopped to claim her share in her husband's estate by reason of the fact that if she had not entered into the contract he would have disposed of his property in such a manner as to deprive her of virtually any interest in it. Stating this in another way, the proposition is that because the husband threatened to practice a fraud on his wife and she believed he could and would do it, therefore, she is to be estopped from claiming what the law would give her, because under

fear that she might get nothing she surrendered a large estate that the law would have cast upon her. The mere statement of this proposition is enough, as it seems to us, to show that there is no merit in the plea of estoppel." 160 Ky. 294, 169 S. W. 868, Ann. Cas. 1917A, 64.

On defendant's appeal the judgment will be reversed and the case remanded with direction to enter a judgment declaring that the defendant has the right under section 6-301 to elect to take one-half of the estate.

It is not necessary to consider plaintiff's appeal which raises only a question of interpretation of the instrument which is held to be unenforceable. That appeal will be dismissed.

RINER, Ch. J., and BLUME, J., concur.