PET. EQ.

Case 55.

## Chambers and Wife *vs.* Davis, &c.

### APPEAL FROM MADISON CIRCUIT.

1. When a widow takes the estate of her husband under his will, she holds as devisee merely, and derives no right as widow, although taking under the devise may have the effect to bar her claim to dower·

2. The personal estate of a decedent is the fund primarily liable for the payment of debts. Slaves not specifically devised pass to the executor as assets; slaves specifically devised pass immediately to the devisee, and are not assets.

3. By the act of 1841, (3 *Stat. Law,* 226,) slaves emancipated by will are made equitable assets, but are not to be sold but by a decree of the chancellor, and he is not authorized to make such decree unless all other estate of the testator, of every kind, is insufficient to pay his debts, nor even then, if a fund sufficient to pay debts may be raised from their hire.

4. Devisees of real estate and of slaves specifically devised are bound to contribute out of their devises where it is necessary for the payment of debts.

5. A devise of slaves to the widow of the testator for a period of years, but to be retained by the executor for one year, and hired out to raise a fund to pay debts, is a specific devise of the slaves to the widow, within the meaning of the statute.

The opinion of the court contains a statement of the facts of the case.

*S. Turner,* for appellants—

The executor, after having exhausted all the assets set apart by the will for the payment of debts, has paid $1,596 87 out of his own estate, and there remains $1,611 28 still outstanding and unpaid against the estate, and making an aggregate of $3,208 15 to be made out of the devised estate.

On a hearing the court decreed that the interest of Mrs. Nelson, now Mrs. Chambers, in the slaves be first sold, and that so much of the landed estate of the testator as would satisfy the residue of the liabilities of the estate be next sold in fee simple.

From this decree Chambers and wife have appealed, and we bespeak the full scrutiny of the court to the interesting and perplexing questions arising in the case, mainly out of our various statutes, heretofore unexpounded, bearing upon the case.

It will be seen that the negroes who are now slaves, but are to be free at a certain period, are not made parties to this case, and we suppose that according to the decision in the case *Chasteen vs. Ford*, 5 *Litt.* 268, they were not necessary parties, as the period of their freedom under the will has not yet arrived.

The statute of 1798, (1 *Statute Laws*, 575, *section* 6,) declares: "If an estate be conveyed by deed or will expressly or by averment for the jointure of the wife in lieu of dower, and she accepts of the same, she is barred of dower in her husband's lands."

By the Revised Statutes, page 393, section 7th "a conveyance or devise of real or *personal* estate by way of jointure bars dower."

By the law previous to the Revised Statutes, a devise of slaves or personal estate was not a legal jointure, pleadable at law in bar of dower. (*Bailey vs. Duncan*, 4 *Mon.* 264–65.) But under our statute of 1798 the widow might be put to her election in case the bequest was *intended* to be in lieu of dower.

Under the statute of 1798, (1 *Statute Law*, 576, *sec.* 8,) if a widow be evicted from her jointure or any part thereof, she was entitled to be endowed of other lands of the husband; and the same principle is embodied in the Revised Statutes, 394, section 8, and 195, section 14.

And the same principle is contained in the statute 27 Henry the VIII, chapter 10, section 7. (See 1 *Roper on Husband and Wife*, 493.)

All three of the constitutions of Kentucky, in providing for the emancipation of slaves, reserved the rights of creditors.

By 3 statutes 226, section 1, and by Revised Statutes, 646, section 1, slaves emancipated by will are declared to be equitable assets for the payment of debts.

We contend that the provision made for the widow by the will of Nelson amounts to a jointure, and barred her right of dower in his estate, and that as she had an undoubted right to dower in his lands exempt from liabillty for debts, her jointure in the lands at least being in consideration and bar of dower is equally exempt, and at any rate it is the last portion of the estate that can be legally reached for the testator's debts, and we take it for granted that in decreeing a part of the estate to be sold in payment of debts, the court will order that part to be sold first which should properly be first liable, as between the devisees under the will.

Then, as it respects the slaves, we contend for the same principle as between the widow and the right to freedom of the negroes; the widow takes the slaves under the will, not as a volunteer as between her and the negroes, but for a valuable consideration in lieu of dower, as jointure in the slaves, and in bar of dower in slaves, and hence their right to freedom should be subjected first to the payment of debts instead of the interest of the widow.

If the testator had attempted to emancipate all of his slaves immediately after his death, this would not have deprived the widow of her right of dower in the slaves, and that dower would surely not have been liable for the testator's debts until the slaves outside of the dower and the residuary interest of those covered by the dower were made liable to the testators debts; and this principle is recognized in the Revised Statutes, 282, section 14, which is more favorable to the negroes than the law was previous to those statutes. We therefore contend that the de-

cree in this case should be for the sale first of the freedom right of the negroes, and then the residuary interest in the land, as the law in its general provisions makes personal estate and slaves of a living as well as a deceased person first liable to the payment of his debts.    (See *Morgan's ex'or vs. Morgan,* 2 *Bibb,* 391.)    And such is the case under the Revised Statutes, page 326, section 2, and 1 Statute, 62, section 3.    The *pro rata* act of 1839, 3 Statutes, 241, sections 2 and 3, expressly makes the personalty and slaves first liable, and the bill in this case is substantially under that act.

We have given the reason above for exempting the interest of the widow in the slaves from being liable for the debts until the remainder in the slaves and land be first exhausted, as the widow takes her interest as against devisees for a valuable consideration, the giving up of her dower interest, and the remaindermen take their interest without consideration, and as volunteers; and if the clause of the Revised Statutes, above cited, making a devise of slaves or personalty a bar to dower, is to bear upon this case, it will give the above view of the subject more strength and vigor.

We further contend that as between devisees, the interest of the residuary devisee or of the devisee in remainder, should be first made liable to the payment of the debts of the testator, before the particular or first estate in point of enjoyment, whether the case be decided under the laws of England or Kentucky; and if the Revised Statutes are held to bear upon this subject, and the court should think that the whole interest in the slaves should be first made liable, that according to the law heretofore and also under the Revised Statutes, page 194, sections 2, 3, 4, 5, the widow should be allowed contribution against the residuary interest in the land.

We contend that the court erred in the details of the decree in this: the increase in the female slaves, instead of being sold and held in servitude until they

are each twenty-five years of age, are directed to be sold and held in servitude only until their respective mothers are twenty-five years old.

We make no question as to the proper parties being before the court, and of course there can be no reversal upon that ground, and hope that the case may be decided upon its broad merits, and that the rights of the parties will be definitely settled. The case is an unusually hard one for the widow, as every one of the slaves owned by the testator, except Ned, came by her as a part of her inheritance.

Judge SIMPSON delivered the opinion of the Court—

February 7.

Jonathan Nelson died in 1846. By his will, he devised his landed estate to his wife during her life, and after her death, to his sister's children. He devised all his slaves to his wife, except a man named Ned, for a certain period of time, at the expiration of which they were to be free. He also bequeathed to his wife a part of his personal estate, and the residue thereof, together with the rents of his land, and the hires of his slaves for one year, he constituted a fund for the payment of his debts, and nominated and appointed John Chambers his executor, who qualified the acted in that capacity.

Chambers and the widow afterwards intermarried, and the estate which the testator provided for the payment of his debts having proved insufficient for that purpose, they filed a petition in equity in this case, to which they made the devisees of the estate in remainder parties, in which they alleged that all the assets in the hands of the executor had been exhausted, and there still remained a considerable debt against the estate, and prayed that the estate in remainder might be subjected to its payment.

Upon a settlement with the executor, made under the order and superintendence of the Circuit Court, it appeared that the debts against the estate exceeded the assets in the hands of the executor more than

three thousand dollars. To supply this deficiency, the court decided that the time the slaves had to serve the widow before they were to be free, should be first liable, and if the slaves proved insufficient, then so much of the land should be sold as might be necessary to make the residue, and entered a judgment accordingly. From that judgment the plaintiffs have appealed, and contend that the devise to the wife was in lieu of dower, and cannot be made liable for the payment of debts at all, or if it be liable, all the other estate of the testator should be first exhausted, even including the right of the slaves to their freedom.

If an estate be legally settled on the wife, before marriage, as a jointure in lieu of dower, or if, after the death of her husband, she has dower regularly allotted to her, in either case such estate would not be liable for the payment of the husband's debts. But when she takes under the will, she holds the estate as devisee, merely, and derives no right to it as widow, although the devise may have the effect to bar her claim to dower. The statute allows her the right to waive the provision made for her by the will, and demand her dower, (1 *Stat. Laws*, 575,) but if she fail to do it, and claims under the will, she occupies the same attitude of other devisees. The act is voluntary on her part, and if she accept the provision made for her by the will, she must take the estate, subject to all claims against it. If she had the right to hold it exempt from the payment of her husband's debts, it would follow that a testator, by devising his estate to his wife, could place it out of the reach of his creditors. The estate in her hands as devisee has no such exemption, nor has she the right, as widow, to require that the testator's other estate shall be applied to the exoneration of the estate devised to her.

The personal estate is the fund primarily liable for the payment of debts. Slaves not specifically devised, pass as assets into the hands of the executor, and constitute a portion of this fund. Slaves specif-

1. When a widow takes the estate of her husband under his will, she holds as devisee merely, and derives no right as widow, although taking under the devise may have the effect to bar her claim to dower.

2. The personal estate of a decedent is the and primarily liable for the payment of

CHAMBERS
AND WIFE
*vs.*
DAVIS, &c.

debts. Slaves
not specifically
devised pass to
the executor as
assets; slaves
specifically de-
vised pass im-
mediately to the
devisee, and are
not assets.

3. By the act
of 1841, (3 *Stat-
ute Law*, 226,)
slaves emanci-
pated by will
are made equi-
table assets, but
are not to be
sold but by a
decree of the
chancellor, and
he is not author-
ized to make
such decree un-
less all other es-
tate of the tes-
tator, of every
kind, is insuffi-
cient to pay his
debts, nor even
then if a fund
sufficient to pay
the debts may
be raised from
their hire.

4. Devisees
of real estate
and slaves spe-
cifically devised
are bound to
contribute out of
their devises
when it is nec-
essary for the
payment of
debts.

ically devised pass as real estate, and are not assets in the hands of the executor.

By the act of 1841, (3 *Stat. Laws*, 226,) slaves emancipated by last will and testament, are made equitable assets in the hands of the executor, but are not to be sold for the payment of debts, except by a decree of a Court of Chancery, and no decree for that purpose can be rendered, unless it shall be made to appear that all the other estate of the testator, of every kind, is insufficient for the payment of his debts. An absolute sale of the slaves cannot therefore be made in this case until all the other estate shall be exhausted, and not even then, if a sale or hire of them for a term of years will be sufficient to pay the balance of the debt. But as the slaves may be sold for the time, they are to remain in slavery, and as that time was devised to the widow, the question occurs whether she has the right to have the assets so marshaled as to compel the devisees of the estate in remainder to contribute with her to the satisfaction of the debts still remaining due and unpaid.

Devisees of real estate have, under some circumstances, been required to aid the specific legatees of chattels in paying the testator's debts. Thus, if land be devised, the specific legatee of a lease for years may compel the devisee of the land to contribute with him to payment of the debts, where the whole personal fund has been exhausted. (*Long vs. Short*, 1 *P. Wms.* 403 ; *Williams on Ex'rs*, vol. 2, *page* 843.) Whether this doctrine be correct or not, still a specific devisee of a slave occupies a different attitude from that of a legatee of a specific chattel. The former passes directly to the devisee, as real estate ; the latter is assets in the hands of the executor, and without his assent, the title to it does not vest in the legatee. We think, therefore, that the devisees of real estate, and of slaves specifically devised, should abate proportionably, where an abatement is necessary for the payment of debts, inasmuch as both of said estates have to be reached in the hands of the devisees.

The statute, which provides that slaves, so far as respects last wills, shall be deemed real estate, and pass under them in the same manner, and under the same regulations as landed property, has been con-. strued to apply alone to slaves specifically devised. (*McDowell's adm'rs vs. Lawless*, 6 *Monroe*, 139.) It becomes, therefore, material to inquire and determine in this case whether the slaves were specifically devised to the wife, and vested in her as devisee; or passed to the personal representative.

In the cases of *Wood's ex'rs vs. Wickliffe*, 5 *B. Mon.* 189, and of *Darnall, &c. vs. Adams, &c.* 13 *B. Mon.* 273, it was decided that a general residuary. devise, after the payment of debts, although slaves were embraced in it, was not a specific devise so. as to pass the title in the slaves to the devisees. The ground upon which those decisions seem to be based was, that nothing was given by the residuary clause but what might remain after the payment of debts, and that therefore the slaves found to be included in that clause were not devised away from the executor, but went as assets into his hands for the payment of debts, and might be applied in that way, and never, in fact, vest in the devisees. The testator, however, in this case, directed his executor to hire out his slaves for twelve months, at the expiration of which time they were devised to his wife. The slaves were not left as assets in the hands of the executor, nor had he any power over them, except for one year. The same power was given to him over the testator's land, but the rents and hires were alone to be applied by him to the payment of debts. When the year terminated, both land and slaves went into the possession of the wife as devisee, by the express provisions of the will. The devise of the slaves to her must therefore be regarded as a specific devise, by which the title vested in her immediately on the death of the testator, subject only to a postponement of the enjoyment of the possession for a period of twelve months.

VOL. XV—34

CHAMBERS
AND WIFE
vs.
DAVIS, &c.

5.. A devise of slaves to the widow of the testator for a period of years, but to be retained by the executor for one year, and hired out to raise a fund to pay debts, is a specific devise of the slaves to the widow, within the meaning of the statute.

CHAMBERS
AND WIFE
vs.
DAVIS, &c.

The assets which came to the hands of the executor must, however, be entirely exhausted before either the land or slaves specifically devised should be made liable. It does not appear that the personal estate bequeathed to the widow, has been applied to the payment of debts. It should be accounted for and applied to that purpose. The testator directed that one of his slaves, by the name of Ned, should hired out for five years, unless a certain contingency occurred in the mean time. These hires, to the extent that they accrued, were also assets in the hands of the executor, and should be charged against him in the settlement of his accounts.

The estate in the slaves, devised by the testator to his wife, and the estate in remainder in the land, will have to be valued, and each of them will have to contribute proportionably to the payment of the balance of the debt that may be found due, after crediting thereon the personal estate and hires aforesaid.

As the testator died before the Revised Statutes took effect, the decision of this case is governed by the previous law. Whether the law applicable to the case has in any respect been altered or modified by the Revised Statutes, and if so, to what extent, we do not feel ourselves called upon to determine.

As the judgment of the Circuit Court is inconsistent with the principles of this opinion, it is deemed erroneous and must be reversed.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings, and a judgment in conformity with this opinion.