## Redwine's Executor, et al. v. Redwine.

(Decided October 15, 1914.)

### Appeal from Breathitt Circuit Court.

1. Wills—Renunciation of by the Widow.—Under section 1404 of the Kentucky Statutes, and as therein provided, the widow may relinquish what was given her by a will and thereupon receive her dower and distributable share as if no will had been made.

2. Jointure.—A post-nuptial contract for the conveyance or devise of real or personal estate received by way of jointure, as described in section 2136 of the Statutes, may also be avoided by the widow if her contract to accept jointure was not based on a sufficient consideration or if it was not freely and voluntarily entered into.

3. Husband and Wife—Contracts—Relinquishment of Jointure— Construction of Sections 2128 and 2136 of the Statutes.—So much of section 2136 of the Statutes as provides that the wife may voluntarily relinquish a conveyance or devise by way of jointure made after her marriage, was impliedly repealed by section 2128 of the Statutes conferring upon married women the power to make contracts with their husbands, and now a married woman, who accepts jointure in lieu of dower and distribution, cannot voluntarily elect to relinquish the jointure; but she may, if the contract of jointure was not freely and voluntarily entered into, or if she did not receive a sufficient consideration for the execution of the contract, maintain a suit to have the contract set aside.

4. Husband and Wife—Jointure—When Conveyance or Devise in Lieu of Dower Will and When It Will Not Be Set Aside.—When the wife freely and voluntarily, upon a sufficient consideration, agrees to accept a conveyance or devise of property in lieu of her dower and distributable share of her husband's estate, and the husband executes his part of the contract by conveying or devising, as the case may be, the estate, she cannot, after his death, voluntarily set aside her contract by merely observing the form of relinquishment provided in section 2136. But if the conveyance or devise is not based on a sufficient consideration, or is not freely and voluntarily made, the wife may bring a suit to avoid the contract and take her share under the Statute.

5. Husband and Wife—Right of Wife to Have Set Aside Contract Accepting Jointure in Lieu of Dower and Distribution—Facts

Stated.—Where the husband owned an estate consisting principally of money and evidences of debt of the value of $90,000, and the wife was induced to enter into a contract to accept in lieu of her statutory share, property of the value of $15,000, by the threat of the husband that if she did not accept this amount he would dispose of the estate so as to prevent her from getting any part of it, the wife may, in a suit for that purpose, have the contract set aside on the ground that the consideration was not sufficient and that it was not freely and voluntarily executed.

6.  Husband and Wife—Contracts Between—When Wife may have Set Aside a Contract of Jointure.—It is indispensable to the validity of contracts like this that the utmost fairness and good faith should be observed by the husband and that the consideration moving to the wife should be of such value as to reasonably compensate her for what she agreed to surrender, and when the wife, on the verge of her husband's death, agrees to take at his death property of greatly less value than she would receive at his death if no contract had been made, the presumption is that the contract was not fairly obtained and the wife should not be bound by it.

7.  Husband and Wife—Estoppel of Wife to Elect to Take Share of her Husband's Estate Under the Statute.—Where the wife was induced to enter into a contract to accept inadequate jointure in lieu of her statutory share by the threat of the husband to disinherit her, she will not. be estopped to obtain relief from the contract.

8.  Contracts—Conflict of Laws—Place of Performance.—Where a contract and will were executed in Florida, while the parties, who resided in this State, were temporarily sojourning there, and it was contemplated by the parties that the papers would become operative and the contract be performed in this State, the law of this State controls the validity and effect of the contract and will.

L. Y. REDWINE, J. J. C. BACH, G. W. FLEENOR, GRANNIS' BACH and W. N. COPE for appellants, Elsie and Isabelle Redwine.

O'REAR & WILLIAMS and A. F. BYRD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Judge D. B. Redwine died on the 25th day of February, 1913, domiciled at the time of his death in Breathitt County, Kentucky. He left surviving him his widow, the appellee, Nellie Redwine, and two infant children, Elsie and Isabelle, as his only heirs at law.

For a couple of years before his death Judge Redwine was afflicted with a fatal malady, and his death was apprehended at any time. In the winter of 1912, he left his home in Kentucky and went with his wife and children to Florida, hoping to be benefited by the change of climate and conditions.

While they were so sojourning in Florida, and on January 25, 1913, his wife executed and delivered to her husband a writing reciting that "For the consideration that my husband, D. B. Redwine, wills to me the house and lot in Jackson, where we now live, and the contents thereof, and the cottage where Andy Hurst now lives, and $8,000, I hereby release and relinquish all my claim, dowry and homestead in the estate of said Redwine for the consideration above stated. Attest: A. P. Redwine. Signed, Nellie Redwine."

On January 29, while yet in Florida, Judge Redwine made a will, the pertinent parts of which are as follows: "For the fulfillment of and compliance with the terms and contract executed January 25, 1913, by Nellie Redwine, I, D. B. Redwine, make and publish this my last will and testament.

"First: I hereby will and bequeath to my wife, Nellie Redwine, the house and lot in Jackson, Kentucky, where we now live, and the contents thereof, and the cottage where Andy Hurst now lives, and eight thousand dollars. The said two houses and lots and eight thousand dollars is to be her full share and portion of my estate, both real and personal, and in full satisfaction of her claim and dowry and homestead.

"Second. I will and bequeath all of the remainder of my estate, both real and personal, to my two daughters, Elsie Redwine and Isabelle Redwine, and if either should die without children or grandchildren living at the time of their death, then the portion of such one shall go to the other. In the event that both should die without children or grandchildren surviving them the whole of their portion of said estate shall go to and be distributed among my brothers and sisters.

"Third. I hereby nominate and appoint Dr. J. S. Redwine my executor to carry out the provisions of this will, and I also appoint Dr. J. S. Redwine and J. C. Hurst guardians for said Elsie and Isabelle Redwine; the said guardians are to have jointly the control and management of their estate."

And on February 11th he made in Florida the following codicil to his will: "I, D. B. Redwine, being of sound mind and disposing memory, do make and publish this last habendum to the will I made January 29. 1913.

"It is my will that the portion of my estate set apart to Elsie and Isabelle Redwine shall go to them during

their lives only, and that the income, profits and rents shall be theirs to enjoy as they and their guardians see proper.

"If either of said children die without children or grandchildren entitled to inherit, then the portion of the estate of that one shall go to the living one, but if neither one dies leaving children or grandchildren then the whole of their estate shall pass to my brothers and sisters.

"I am making these limitations upon their estate believing it to be for their good."

After the death of Judge Redwine the will and attached codicil were duly probated in the Breathitt County Court and the contract executed by his wife was also recorded. On May 12, 1913, the widow filed in the clerk's office of the county court of Breathitt County the following renunciation of the will of her husband, duly signed and acknowledged by her:

"Know all men by these presents: That I, Nellie Redwine, widow of D. B. Redwine, deceased, do hereby renounce the provisions of the will of my said husband, D. B. Redwine, who died a resident of and domiciled in Breathitt County, Kentucky, on the 25th day of February, 1913, and which will was on the 24th day of March, 1913, duly admitted to probate by the Breathitt County Court and established as the last will and testament of the said D. B. Redwine; and I hereby relinquish the provisions of said will for my benefit and elect to take my dower and distributable share of my said husband's estate as if no will had been made by him."

On the same day she executed and acknowledged before the county clerk the following paper: "Know all men by these presents: That whereas, on January 25, 1913, the undersigned, Nellie Redwine, signed and executed a writing in words and figures as follows:

"'January 25, 1913. For the consideration that my husband, D. B. Redwine, wills to me the house and lot in Jackson, where we now live, and the contents thereof, and the cottage where Andy Hurst now lives, and $8,000, I hereby release and relinquish all my claims, dower and homestead, in the estate of said Redwine for the consideration above stated. Attest: A. P. Redwine, Signed, Nellie Redwine.' * * * And whereas, the said writing dated January 29, 1913, purporting to be the last will and testament of the said D. B. Redwine was duly admitted to probate by the Judge of the

Breathitt County Court on the 24th day of March, 1913, and the same, together with the said writing, dated January 25th, 1913, are recorded in Will Book 1, page 80, in the office of the clerk of the Breathitt County Court; the undersigned, Nellie Redwine, as the widow of said D. B. Redwine, hereby renounces the provisions and terms of said writing, dated January 25, 1913, and signed by her, and also renounces the terms of said will purporting to will and bequeath to her the said real estate, personal property and money referred to in said will in full satisfaction and release of her dower, homestead and interest in the estate of the said D. B. Redwine, deceased, and relinquishes all of the provisions of said will and the terms of said writing for her benefit and the rights granted, and the property willed and bequeathed by same, and elects to take her dower and distributable share in the estate of her husband, D. B. Redwine, deceased, as provided by law.'' And this paper on the 15th day of May was lodged for record and recorded in the county clerk's office of Breathitt County.

In June, 1913, the widow filed this suit in equity, in which, after setting out the execution and recording of the foregoing papers, she averred that the writing executed by her on January 25, 1913, if binding at all, should be construed only in the nature of a jointure, the provisions of which she renounced in the manner stated. She further averred that its execution was without consideration, and asked that the estate of her husband be settled, that the writing executed by her be canceled and held for naught, and that she be adjudged entitled to her dower and distributable share of the estate of her husband.

In an amended petition, she further averred that at the time of the execution of the writing by her, her husband represented to her that the value of his estate at that time was only about forty-five or fifty thousand dollars, and that the property and money which she agreed to accept by the writing was equal in value to at least one-third of the value of his entire estate; and further promised that he would devise the remainder of his estate to their two children without any restrictions upon their right to use, hold and control the same. That she relied on the representations and promises so made.

She further averred that she first objected to signing the said writing, and that upon her refusal at first

to sign the paper, her husband told her that if she did not sign it and agree to accept the property mentioned therein, in full satisfaction of her interest in his estate, he would then make a will which would be much less favorable to her by which she would get much less money and property than by the terms of the paper she was then signing. She also averred that at the time she signed the paper, she believed that his estate was only worth forty-five or fifty thousand dollars, and also believed that unless she did sign the writing her husband would make a will that would either disinherit her entirely or give to her much less property and money than she would receive under the paper she signed. That at the time the paper was written, she was in the State of Florida, among strangers, and had no one with whom she could confer or consult, but that notwithstanding her disinclination to execute the paper, he prevailed on her to sign it.

She also averred that his representations with reference to the value of his property were false, and that his estate instead of being worth forty-five or fifty thousand dollars was worth at least ninety thousand dollars, all of it being in money and collectible evidences of debt except the real estate mentioned in the writing. It was further averred that the representations as to the value of his estate where made by him for the purpose of deceiving and misleading her and for the purpose of securing her signature to the writing, and that when she signed the writing she believed that she was getting under it about one-third of his estate, as the property and money mentioned in the writing amounted in value to about fifteen thousand dollars. She also averred that in his will and codicil he did not give to their children the character of estate that he promised.

After various motions and demurrers had been disposed of, the executor, as well as the infants, by their *guardian ad litem,* filed answers in which, after denying all the material averments of the petition as amended, it was set up that the paper executed by Mrs. Redwine was a voluntary proposition upon her part to her husband to accept in lieu of her dower and distributable interest in his estate the property and money mentioned in the writing and that her husband in executing this will accepted her proposition and devised to her the estate therein set forth, and the same had been tendered to her by the executor.

It was further set up that the writing signed by her was executed in the State of Florida and under the laws of that State was binding and enforceable. That but for the execution and delivery of the paper her husband would have given his property absolutely in his lifetime to his infant children, which he could have done, as all of his personal estate was susceptible of manual delivery; and that he was only prevented from doing this by the proposition made to him by his wife, which he accepted. That having thus prevented him from disposing of his estate otherwise than he did in his will and in the manner in which he would have disposed of it except for the writing, his widow was estopped to attack its validity.

To these answers a general demurrer was sustained, followed by a judgment canceling the paper signed by Mrs. Redwine, and upholding the effectiveness of the renunciation of the will. It was further adjudged that as the paper was canceled and the will renounced, the widow was entitled to her dowable and distributable interest in the estate of her husband.

From this judgment the executor and infants have prosecuted this appeal.

The record only presents for decision questions of law arising on the pleadings, and these may really be resolved into one, as the case turns upon the validity of the paper executed by Mrs. Redwine and her right to renounce or avoid it. With this paper out of the way, or treating it as having no effect, there can be no doubt of her right to renounce as she did the will and take under the statute her distributable and dowable interest in the estate of her husband. It is so provided in section 1404 of the Kentucky Statutes, reading in part:

"When a widow claims her dowable and distributable share of her husband's estate, she shall be charged with the value of any devise or bequest to her by his will; or she may, though under full age, relinquish what is given her by the will, and thereupon receive her dower and distributable share as if no will had been made; but such relinquishment must be made within twelve months after the probate, and acknowledged before and left for record with the clerk of the court where probate was made, or acknowledged before a subscribing witness, and proved before and left with the clerk * * * *."

We have also in section 2136 a statute reading: "A conveyance or devise of real or personal estate, by way

of jointure, may bar the wife's interest in the property and estate of the husband; but if made before marriage, without her consent, or during her infancy or after marriage, she may, within twelve months after her husband's death, waive the jointure by written relinquishment, acknowledged or proved before and left with the clerk of the county court, and have her dower or share of his estate as herein provided. When she so demands and receives her dower, or such share of his estate, the estate conveyed or devised in lieu thereof shall determine and revert to the heirs or representatives of the grantor or devisor.''

And if this paper operated as a jointure and the jointure statute is applicable, there can be no doubt that the widow waived the jointure by the written relinquishment acknowledged and left with the clerk of the county court of Breathitt County, and thereby became entitled to her dowable and distributable share of the estate of her husband under the statute.

It is argued, however, that as the wife had a right to enter into a contract with her husband under which she would receive a certain portion of his estate in lieu of dower and distribution, she could not after the death of her husband voluntarily elect to renounce a contract entered into during marriage. That this contract is equally as binding as any other valid contract, and can only be set aside or annulled for grounds that would authorize the cancellation of any other valid, enforceable contract between the husband and wife.

This argument is rested on section 2128 of the Kentucky Statutes, enacted for the purpose of enlarging the rights of married women and giving them power to enter into contracts the same as if they were unmarried. In other words, under this statute, the common law rule previously prevailing in this State, that the husband and wife were incapable of contracting except in contemplation of separation, was abrogated by the statute, which reads in part:

''A married woman may take, acquire and hold property, real and personal, by gift, devise or descent, or by purchase, and she may, in her own name, as if she were unmarried, sell and dispose of her personal property. She may make contracts and sue and be sued as a single woman.''

The first question, therefore, is, does this statute have the effect of repealing by implication so much of

section 2136 as provides that a conveyance or devise of real or personal property by way of jointure, if made after marriage, may be waived by the wife by a written relinquishment and thereby she will become entitled to her dower and distributable estate under other statutes?

On behalf of the executor the argument is made that the necessary effect of section 2128, and its proper construction is, to empower the wife to make contracts of every kind and character with the husband the same as if she were an unmarried woman, and that it was not intended to except from the operation of this statute the right of the wife to voluntarily contract with her husband for a portion of his estate in lieu of dower and distribution.

In support of this we are referred to the case of Coleman v. Coleman, 142 Ky., 36, in which the court said:

"The present statute with respect to the contractual and property rights of the husband and wife removes from the wife all the disabilities of coverture imposed by the common law in the matter of contracting with other persons, the husband included, subject to the restrictions specified in the statute, none of which prevent her from becoming indebted to the husband or the husband to her." To the same effect is Niles v. Niles, 143 Ky., 94.

Adopting the construction of the statute laid down in the Coleman case, it would seem to follow that where the wife and the husband freely and volutarily enter into a contract by which the wife, uninfluenced by fraud or deceit, in consideration of certain property conveyed or devised to her by the husband, agrees to relinquish her dowable and distributable share in his estate under the statute, it will be binding upon the wife. There appears to be no sound reason why the wife, who is empowered apparently without limitation to contract with her husband, may not enter into a valid contract like this. Nor does this construction conflict with the ruling in Smith v. Johns, 154 Ky., 274, holding that the Statute of Limitation does not apply to contracts of married women.

Section 2136 of the statute, relating to jointure, was enacted by the Legislature many years before section 2128, removing the common law restraints on the right of married women to enter into contracts, and we think it should be construed as repealing by necessary implication so much of section 2136 as provides that it is en-

tirely optional with the wife whether she will elect to abide by contracts made with her husband or elect to renounce them. Before the adoption of section 2128, this written election was plainly conferred by section 2136. The widow was not bound by her contracts as wife, and although she might have voluntarily and freely agreed to accept the provisions of a conveyance or devise in lieu of dower, this agreement was subject to her unrestrained right to set it aside by a relinquishment perfected in the time and manner provided by the statute.

Having this view of the matter, we hold that where the wife, uninfluenced by fraud or deceit, upon a sufficient consideration, freely and voluntarily agrees to accept a conveyance or devise of property in lieu of her dower and distributable share of her husband's estate, and the husband executes his part of the contract by conveying or devising, as the case may be, to the wife the estate she so agreed to accept, she cannot, after his death, voluntarily set aside her contract by merely observing the form of relinquishment provided in the statute.

The remaining question to be considered is, was there a sufficient consideration moving to the wife to estop her from electing to avoid this contract and did she freely and voluntarily enter into it. In disposing of this question we will assume that the wife entered into this contract, without deciding that the form of it was sufficient to bind her. We will also assume as true the material averments of the answer of the executor, to which the demurrer was sustained, although there is really no substantial difference in the pleadings concerning the facts necessary to a decision of this question.

We may state it as virtually admitted that Judge Redwine owned an estate of the value of about $90,000, practically all of which was in money, evidences of debt and personal property. As proof of the fact that the wife was coerced by her husband into the execution of this contract, and that it was not freely and voluntarily entered into upon her part, we find it averred in the answer, and have no doubt it was so averred because it could and would have been proven, that "at the time of the death of D. B. Redwine he was the owner of a very considerable estate, comprised largely of money, interest-bearing notes and other securities producing income; that for some time before his death he had been afflicted with a deadly disease known as Bright's disease of the

kidneys; that he was desirous of leaving his estate to his two infant daughters, the defendants, Elsie Redwine and Isabelle Redwine. * * * That but for the execution and delivery of said writing by the plaintiff, and the reliance of the said D. B. Redwine upon same, he would have given his property absolutely in his lifetime to his said infant children, the infant defendants herein, which he could have done, as all of his personal estate was susceptible of manual delivery.

"That plaintiff by her agreement to accept the two houses and lots and $8,000 in money induced the said D. B. Redwine to believe that she would be satisfied with same as her distributable share of his estate and prevented him from giving said property absolutely to the children in his lifetime, which he would have done but for her written proposition to accept the property named in lieu of her claims against his estate."

We then have a state of case in which the wife who under the statute of descent and distribution would be entitled to an absolute estate in one-half of the personalty of her husband, is induced by his threats to so dispose of it so that she would get little, if anything, agreeing to accept property of the value of $15,000 in place of property of the value of $45,000, and this, too, within a few days of his death and at a time when both of them knew that the fatal disease with which he was afflicted might terminate in his death at any moment.

Under these facts and circumstances, we think it clear that there was no sufficient consideration for this contract, on the part of the wife that it was not freely and voluntarily executed by her and it should be set aside and she be given her share of the estate under the statute.

It is indispensable to the validity of contracts like this that the utmost fairness and good faith should be observed by the husband and that the consideration moving to the wife should be of such value as to reasonably compensate her for what she agreed to surrender. The law has fixed the share of the husband's estate to which the wife shall be entitled at his death, and obviously when the wife agrees, on the verge of her husband's death, to take at his death property of greatly less value than she would receive at his death if no contract had been made, the presumption is that the contract was not fairly obtained and the wife should not be bound by it.

In Coleman v. Coleman, 142 Ky., 36, the court said: "Contracts between husband and wife will be closely scrutinized by the courts, and in so far as they impose liability upon the wife, proof of their genuineness and freedom from coercion must be clear and convincing to authorize their enforcement. This is so because, notwithstanding. the contractual freedom conferred upon the wife by the statute, she is yet more or less under the dominion of the husband by virtue of the closeness and tenderness of the marital relation, and he, if he be an unscrupulous or designing person, may use the advantage thus afforded him to unduly influence and impose upon the wife; therefore, she is entitled to be protected against such machinations, by the courts, where judicial interference in her behalf is authorized by the proof."

In Evans v. Evans, 83 Ky., 510, in speaking of contracts between husband and wife, it is said: "In other words, some contracts between them are enforced in equity, not because of the agreement merely, but because the transaction being just and reasonable, the wife has no equity outside of it."

In Bohannon v. Travis, 94 Ky., 59, the court said: "But a contract between husband and wife will not be enforced in equity in favor of either, unless it is fair and just, founded on a valuable consideration, and reasonably certain as to its stipulations and the circumstances under which it was made." To the same effect is Tilton v. Tilton, 130 Ky., 281.

In Egger v. Egger, 225 Mo., 116, 135 Am. St. Rep., 566, in an elaborate opinion, the court held, in substance, in a case similar to this, that a post-nuptial agreement by the wife to release her prospective distributive share in his estate, based on his promise to make a will giving her much less than she would be entitled to in the absence of a will, was without consideration and not binding on her after his death.

Many cases supporting these general rules may be found, but we believe there is no disagreement among the authorities that contracts such as this will not be enforced against the widow claiming her distributable share under the statute unless they are perfectly fair, based on a consideration giving to the widow property of substantially the same value that she would take under the statute.

It is difficult to understand upon what ground it can be said that the contract made by the wife with her hus-

band on his death-bed, under which she takes much less at his death than the law would give her at his death, can be upheld against her protest, because it seems clear that under the circumstances she did not receive any sufficient consideration to induce her to surrender that which she would shortly get.

It is further said that the widow was estopped to claim her share in her husband's estate by reason of the fact that if she had not entered into the contract he would have disposed of his property in such a manner as to deprive her of virtually any interest in it. Stating this in another way, the proposition is that because the husband threatened to practice a fraud on his wife and she believed he could and would do it, therefore, she is to be estopped from claiming what the law would give her, because under fear that she might get nothing, she surrendered a large estate that the law would have cast upon her. The mere statement of this proposition is enough, as it seems to us, to show that there is no merit in the plea of estoppel.

It is further argued that as the contract was entered into in Florida, the laws of that State must control its validity and effect. We have not deemed it necessary to look into the laws of Florida to ascertain in what particular they differ from the laws of this State with respect to the matter under consideration, as we think the contract is controlled by the laws of this State.

The parties were only in Florida on a temporary visit. Their home was in Kentucky and to this State they shortly expected to return. Neither the contract nor the will was intended to have any effect in Florida. The estate of Judge Redwine was here and here it was contemplated by all parties the papers would become operative and the contract be performed. Under circumstances like these the law of the place where the contract is to be and must be performed, and not the place where it is made, controls its validity and effect: Pritchard v. Norton, 106 U. S., 124, 27 L. Ed., 104; Goddin v. Shipley, 7 B. Mon., 575; Sterns v. Gregg, 89 Ky., 461; Pittsburg R. Co. v. Sheppard, 56 Ohio State, 68; 60 A. S. R., 732.

Upon the whole case we conclude that the judgment should be affirmed, and it is so ordered.