# Lee et al. v. Gathright's Ex'r et al.

(Decided June 23, 1936.)

DAVID R. CASTLEMAN, SR., and DAVID R. CASTLEMAN, JR., for appellants.

BRUCE & BULLITT, SHACKELFORD MILLER, JR., and A. C. VAN WINKLE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Owen Gathright died testate on January 26, 1931, in the city of Louisville, Ky., the place of his residence. His will, with its numerous codicils, was duly probated after his death. Also an executor of his will was appointed, as well as a trustee for a trust fund created by him for the benefit of his sisters during their lives with the corpus after their deaths to go as directed. On November 24, 1934, the executor and trustee, Fidelity & Columbia Trust Company filed this declaratory judgment action against all of the distributees and beneficiaries under the will, including the surviving widow, to obtain a construction of its terms and a direction as to its course in the conditions therein set forth, which were: That the general financial depression existing and prevailing throughout the country had resulted in a depletion of the value of the assets of the estate so as to render its total amount at that time insufficient to meet all general devices preceding the residuary clause. In other words, that such conditions had reduced the amount of the assets of the estate to such a point as that there would be no property to pass under the residuary clause, and even to the extent of reducing the total assets below the amount necessary to satisfy individual pecuniary legacies.

Such conditions appear to have been the principal cause for filing the action at the time it was done; but before the litigation was finally terminated by the rendition of the judgment appealed from on March 12, 1936, the assets of the estate under improved conditions had increased in amount sufficient to not only meet the

individual bequests and legacies made in the will, but to leave a surplus to go to the residuary legatees. That condition was later manifested by an amended petition, and the chief basis for filing the action thereby vanished. However, and in the meantime, appellants and some of the defendants below, who received definite amounts of pecuniary legacies under the will, raised the question as to when such legatees were entitled to interest, they claiming the right to collect it from and after one year following the testator's death, and which contention was based on the provisions of section 2065 of our Statutes, saying: ''If no time is fixed for the payment of a specific pecuniary legacy, it shall be payable one year after the testator's death, and carry interest after due.'' The residuary legatees denied that asserted right by insisting on a strict and narrow interpretation of that section, whereby it was confined to technical specific pecuniary legacies, and contended that it had no application to general pecuniary legacies payable out of the general funds of testator's estate. Learned counsel for appellants, however, combated that interpretation of the section and contended that it had been construed by this court in prior opinions to embrace the character of general pecuniary legacies such as was bequeathed to their clients by the Gathright will. The legal issue was thus sharply drawn and the court upon final submission denied appellants interest on their pecuniary legacies, except from the time of the rendition of the judgment, and to reverse it they prosecute this appeal.

It must be admitted that a literal interpretation of the descriptive words of the section, defining the characted of pecuniary legacies embraced by its terms, would seem to uphold the contention of appellees and also the judgment of the learned chanceller who tried the case, but we are confronted with decisions of this court construing the section to the contrary and in accordance with the contention of appellants. A partial list of those cases is: Grainger's Ex'rs and Trustees v. Pennebaker, 247 Ky. 324, 56 S. W. (2d) 1007; Harlan's Trustee v. Harlan, 228 Ky. 73, 14 S. W. (2d) 397; Hood v. Maxwell, 66 S. W. 276. 23 Ky. Law Rep. 1791; Piper's Ex'r v. Adair, 64 S. W. 645, 23 Ky. Law Rep. 866; Redd's Adm'r v. Redd, 58 S. W. 428, 22 Ky. Law

Rep. 505, and Chamber's Guardian v. Chambers' Ex'rs, 87 Ky. 144, 7 S. W. 620, 9 Ky. Law Rep. 981. On the other hand, learned counsel for appellees cite and rely on the cases of Tagnon's Adm'x v. Tagnon, 253 Ky. 374, 69 S. W. (2d) 714, 715, Ballinger's Devisees v. Ballinger's Adm'r, 251 Ky. 405, 65 S. W. (2d) 49, 50, and Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221.

An examination of the respective lines of cases each party relies on will reveal that the court was dealing with two separately distinct questions in the two lists of cases. In those relied on by appellees, it was in effect, and possibly explicitly, held that a pecuniary legacy, payable out of the general funds of the estate of the testator, should be treated as a general legacy in contradiction to a specific one in settling the rights of priority of payment when the assets of the estate were insufficient to pay all of the legacies provided for in the will; whilst in the cases cited and relied on by appellants' counsel the court seems to have taken a different view in determining the question as to the date for the commencement of the right of the legatee to draw interest on his legacy where that question was involved and was the one for determination. That holding is quite positively asserted in appellants' cited cases. On the other hand, this court in the cases relied on by appellees said that: "A specific legacy or devise is the gift by will of a specific article or piece of property capable of identification. As to personalty, it may be corporeal, an illustration of which would be the devise of a piano; or it may be one of incorporeal personalty, provided the amount is fixed and is directed to be paid out of a certain and specific fund." Ballinger case, supra.

They also rely on this language taken from the Tagnon opinion: "In determining whether a particular legacy is general or specific, the intention of the testator must prevail, and, in the absence of evidence in the will to the contrary, a legacy will be construed to be general. Courts are not inclined to construe legacies to be specific, and will not do so unless such is the clear intention of the testator. Ordinarily, a legacy of quantity is a general legacy. The rule, well-nigh universally applied, for determining whether a legacy is general

or specific, is that a legacy is general when it is so given as not to amount to a bequest of a particular thing distinguished from all others of the same kind, and is specific when it is a bequest of a specified part of the testator's estate which is so distinguished and which may be satisfied only by the delivery of the particular thing. Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221; Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437, 13 Ky. Law Rep. 380."

As stated, the court in the two latter cases, as well as the others above listed by appellees' counsel, had under consideration the question of priority of payment as between different classes of legacies when the estate was insufficient to pay all. Moreover, it will also be noted that the inserted excerpts are not altogether clear as to whether the court intended to and did hold that a definite pecuniary legacy was intended to be em-braced in such declarations. But conceding arguendc that such pecuniary legacies were intended to be embraced therein, still the fact remains that the declarations related only to the principle governing the rule of priority in payment, and did not touch the question of the right to collect interest on the pecuniary legacies involved, or as to when that right if possessed should commence.

The cases supra, cited and relied on by appellants' counsel, emphatically state that a legacy of the exact nature and kind of the ones here involved draws interest from and after one year immediately following the death of the testator, and which character of legacy is declared as coming within the provisions of section 2065, supra, of our Statutes. But it is claimed that in some of those opinions, and particularly the Harlan one, such a declaration was obiter. We are extremely doubtful as to the correctness of that characterization, but, conceding it to be true, we are still confronted with a similar prior and equally emphatic one made in the prior Redd and other cases cited in appellants' list. The only question involved and the only one decided in the short and brief opinion in that (Redd) case was the identical one here presented under appellants' contention. The latter ones in the list followed it and in at least some of them the approval was not dictum.

All of them are in accord with the common law on the question, i. e., as to when a pecuniary legacy of a definite amount commences to draw interest, as will be seen from the text in 69 C. J. on pages 1260, sec. 2642; 1261, sec. 2643; and page 1265, sec. 2650. See, also, the foreign case of State Bank of Chicago, Ex'r, etc., v. Wilhelmina Gross, 344 Ill. 512, 176 N. E. 739, 741, 75 A. L. R. 172, and annotations thereto in the last publication beginning on page 179. That annotation refers to a prior one found in 10 A. L. R. 997. In the opinion in the Illinois case, as well as in the annotations referred to, most cogent reasons are given why the interpretation of the language of our Statutes upon the subject (and which we have emphatically said was declaratory of the common law rule) should be construed to embrace such pecuniary bequests as the ones here involved. From that opinion we take this statement: "To allow the contention of plaintiff in error [the same as that of appellees here] in this case would be to enrich the residuary legatees by income from the trust fund which would not properly belong to the residuum of the estate." It is true that the income there involved went to the life tenants of a created trust fund, but it constituted their pecuniary legacy, and it was produced from what was received from the investment of the trust fund, but in the absence of such investment, then from interest thereon, and it was held that the life tenant of the income was entitled to interest commencing one year after the death of the testator in conformity with the common-law rule on the subject. A more lengthy discussion of the question would serve to point out the practical unanimity of the courts in approving the rule as declared in our Redd Case, supra, as well as in the other and later adopting ones, although in some of them dictum may have been employed.

In addition to the condition of the law, as so outlined, we are constrained to the conclusion that both logic and the principles of equity call for that interpretation, even when there is a statute, but which by its terms is only declaratory of the common law relating to the question. All domestic cases, as well as others so far as our examination extends, adopt the common law principle that a definitely measured pecuniary

legacy is due and payable one year after the death of the testator. In determining whether or not it should thereafter draw interest is an entirely separate and distinct question as to when interest may be collected on a trust fund composed of investments made by the testator before his death. It also is separate and distinct, according to our opinions as we have seen, from the one involving priority of right of payment when there is an insufficiency of assets of the estate. According to that common-law rule, we are at a loss to find a reason why such a legacy, although for some purposes it might be denominated a general one, should not draw interest from the time it becomes due and payable. The title thereto is certainly then vested in the legatee to whom it is bequeathed. It then becomes in every respect his property, and the representative of the estate is then called upon to pay it to him. If that duty should not be performed, followed by a disallowance of the right to collect back interest, then the residuary legatees become enriched at the exclusive expense of such pecuniary ones, though they may be of the class generally characterized as "general specific" legacies. It must not be forgotten that the law everywhere says that the principles hereinbefore enunciated by the common law are based upon the presumed intention of the testator in the absence of contrary provisions. The disallowance of interest as adjudged by the learned trial court would thwart and contravene that presumed intention of Owen Gathright, the testator in this case, without any indication in his will to the contrary.

While no reason is advanced in any of our opinions in the listed cases by appellants' counsel for construing the language of 2065, supra, of our Statutes, so as to embrace the character of legacy now under consideration, we can imagine that the reasons were those hereinbefore recited, and also because of the conclusion that the purpose and intention of the Legislature in enacting it was to embrace such legacies, but was unhappy in the misleading language employed to express it. But whatever the propelling reason for the interpretation advanced in our Redd and following opinions, they have declared that the statute, supra, embraces and applies to a pecuniary legacy that is specific in amount regardless of the fund out of which

it is made payable. Some foundation for that conclusion may be drawn from the fact that there is no logical reason why the limited character of legacy therein specified should be the only one to draw interest. The statute was dealing with ''pecuniary'' legacies, and the word ''specific'' as therein employed was, most probably, intended to embrace not only technically declared specific legacies, but also one for a definite named sum of money regardless of the fund out of which it should be paid. But whatever the reason, the court has so construed it. We think that every principle of right and reason sustain that interpretation. If, however, we were of a contrary opinion, we do not think sufficient reasons are advanced why we should discard that interpretation by overruling the cases approving it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and to render one in conformity with the principles of this opinon. The whole court sitting.