# Maynard's Adm'r et al. v. Maynard.

Oct. 22, 1940.

W. E. Nichols, C. F. Kelly and R. P. Moloney for appellants.
Leer Buckley for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case presents the construction of the will of the late W. B. Maynard, who died in December, 1927, in relation to the rights of his widow, and also the question of liability of the executor and subsequent administrator de bonis non with the will annexed, for interest on bequests tardily paid legatees. The material portions of the will are as follows:

"1. I direct that all my just debts and funeral expenses be paid out of my estate as soon as practical after the time of my decease.

"2. I direct that my executor, hereinafter named, shall sell all of my real and personal property as soon as practical after the time of my decease and to convert the same into cash.

"3. I hereby give, devise and bequeath to my beloved wife, Ollie L. Maynard, one-half of the proceeds of the sale of the personal property of my estate and an additional sum in cash which is equal to the cash value of her dowery interest in the real estate that I own at the time of my death, said dower interest to be calculated according to the most favorable Mortality Tables, my wife to have the said sum absolutely and in fee simple.

"5. All the residue of my estate of every kind and description which I now own and have the right to dispose of at the time of my decease, I give, devise and bequeath to Essie Preece Earles. The reason for this bequest is that the said Essie Preese Earles is a niece of my deceased wife, Laura B. Maynard, and that my deceased wife and I, by our joint efforts, accumulated the estate which I now have."

The omitted portions consist of a preamble and several specific cash bequests, provision for the erection of a monument, and the nomination of the executor.

The suit was brought by the sole devisee and executor of the will of Mrs. Earles who died in 1935. The widow sought to have the will construed differently. She charged the personal representative had failed to recognize her full rights and pleaded its liability for in-

terest on her bequest because it was not paid within the time designated by the statute.

The bequest to the widow is the equivalent of her statutory distributable share (Sec. 2132, Kentucky Statutes) and clearly was made in lieu thereof, the only difference being that it should be paid in cash rather than a portion in kind. Recitation that the estate was the accumulation of the joint efforts of the testator's first wife and himself discloses an intention that her niece, Mrs. Earles, should receive a substantial part of the estate and that the widow should have what the law gave her, but in money, so that his estate would not be involved in joint ownership with the first wife's niece.

The trial court was of opinion that the will created an estate by way of jointure in the cash proceeds, free from the debts of the testator and from the costs of administration; that is, that the widow was entitled to one-half of the gross personal estate and the present cash value of one-third of the gross proceeds of the real estate. The decision was primarily rested on the construction of Section 2136 of the Statutes, given in Tevis' Executors v. McCreary, 60 Ky. 151, 3 Metc. 151. The statute is as follows:

> "A conveyance or devise of real or personal estate, by way of jointure, may bar the wife's interest in the property and estate of the husband; but if made before marriage, without her consent, or during her infancy or after marriage, she may, within twelve months after her husband's death, waive the jointure by written relinquishment, acknowledged or proved before and left with the clerk of the county court, and have her dower or share of his estate as herein provided. When she so demands and receives her dower, or such share of his estate, the estate conveyed or devised in lieu thereof shall determine and revert to the heirs or representatives of the grantor, or devisor."

Section 2137 is as follows:

> "Where the wife is lawfully deprived of her jointure, or any part thereof, and not by any act of her own, she shall have indemnity therefor out of her husband's estate."

The term "jointure" means generally a competent

livelihood for the wife in the husband's property, to take effect after his death. Grider v. Eubanks, 75 Ky. 510, 12 Bush 510. As stated in Pepper v. Thomas, 85 Ky. 539, 4 S. W. 297, 299, 9 Ky. Law Rep. 122, it means an estate conveyed or devised to the wife in lieu of dower, and "It must be in satisfaction of it; and, if transferred to her without any intention or purpose that it shall be so, it does not operate to bar her claim. If, however, the grantor or devisor intends the estate conveyed or devised as in lieu of dower, then it is a jointure, and so operates. The bar arises, not by operation of law, but from the express or implied intention of the husband."

Originally jointure took the form of conveyance to the husband and wife during their lives and after the husband's death to the wife. It seems that anciently such a settlement upon the wife was construed as entitling her to its benefits in addition to dower, but long ago in the history of our jurisprudence, during the reign of Henry the Eighth, it became the subject of a statute which is the genesis of our statute barring dower by a grant of jointure to the wife and giving her the right of election as between such a settlement and her distributable share under the law. 9 R. C. L. 598; Grogan v. Garrison, 27 Ohio St. 50; Jacobs v. Jacobs, 100 W. Va. 585, 131 S. E. 449; Tusing v. Tusing, 169 Va. 769, 194 S. E. 676.

Our jointure statute was first enacted in December, 1796. Littell's Digest Statute of Kentucky, page 444. It remained substantially the same down to 1894. Up to that time the statute related only to dower. It was amended (Acts 1894, Chapter 76, page 176) to cover all "the wife's interest in the property and estate of her husband." Opposite to that intended in the long ago, the purpose and effect of the statute would seem to be to protect the widow and prevent her husband from depriving her of the property rights given her by other provisions of the statute of descent and distribution. It gives the widow a right to elect to receive her statutory distributable share of her husband's estate, or to accept the property given to her by contract or conveyance or will. Cases involving post-nuptial contracts by which it was claimed the wife had agreed to accept less than her legal distributable share in her husband's estate are, Loud v. Loud, 67 Ky. 453, 4 Bush 453; Morgan

v. Sparks, 108 S. W. 233, 32 Ky. Law Rep. 1196; Redwine's Ex'r v. Redwine, 160 Ky. 282, 169 S. W. 864, Ann. Cas. 1917A, 58; Johnson's Adm'r v. Johnson, 231 Ky. 740, 22 S. W. (2d) 124. Cases holding that a conveyance or gift to a wife was in addition to and not in lieu of her distributable share in the estate are, Worsley's Ex'r v. Worsley, 55 Ky. 455, 16 B. Mon. 455; Yancy v. Smith, 59 Ky. 408, 2 Metc. 408. We are concerned in this case not with an election between accepting an estate of jointure or accepting dower in its general sense. We are concerned with an election between receiving her statutory share or accepting the benefits of the will.

As we have stated, the trial court followed Tevis' Ex'rs v. McCreary, 60 Ky. 151, 3 Metc. 151. In that case there was a specific bequest to the widow of $10,000, and of books, plate and furniture; a bequest to a brother of $3,000 in trust, and a residuary devise. Upon a settlement of the estate it was found the assets were insufficient to pay both specific legacies. The question was whether the deficit should be abated proportionately or the widow's bequest paid in full. Although the testator disclosed no intention of a preference, it was held that because of the statute relating to an estate by way of jointure the devise to the widow should be regarded as predicated upon a valuable consideration as for a debt owing from the testator or in consideration of the widow's relinquishment of her right to dower; therefore, her bequest of $10,000 should be paid without any deduction; otherwise she would be deprived of her estate by way of jointure and the statute (now Sec. 2137) declared that where that is the case she should be indemnified.

There is a distinction between that case and this one. The opinion does not disclose a direction by the testator to charge his entire estate with his debts as does the Maynard will we are now considering. Nor was the widow's bequest left indefinite and ascertainable only by a settlement of the estate or at least by the sale of the property. The two conditions make inapplicable the rule that a residuary legacy shall be first used to pay the debts and cost of administration, as applied in Grainger's Ex'rs and Trustees v. Pennebaker, 247 Ky. 324, 56 S. W. (2d) 1007. The Tevis case seems to have involved only the question of pro-rating the deficit

after payment of debts between two specific legacies, one of which was to the widow, but the import of the opinion goes further. It is not altogether in accord with the previous or subsequent opinions. Thus in Chambers v. Davis, 54 Ky. 522, 15 B. Mon. 522, testator devised his "landed estate" to his widow for life, with remainder to his sister's children, his slaves for a certain period and part of his personal estate. He provided the residue of his estate together with the rents of his land and hire of the slaves should be used to pay his debts. The provision proved to be insufficient. It was held that the widow occupied the same position as other devisees and that her devise was subject to the debts of the estate, the court saying:

"If an estate be legally settled on the wife, before marriage, as a jointure in lieu of dower, or if, after the death of her husband, she has dower regularly allotted to her, in either case such estate would not be liable for the payment of the husband's debts. But when she takes under the will, she holds the estate as devisee merely, and derives no right to it as widow, although the devise may have the effect to bar her claim to dower. The statute allows her the right to waive the provision made for her by the will, and demand her dower (1 Stat. Laws, 575), but if she fail to do it, and claims under the will, she occupies the same attitude of other devisees. The act is voluntary on her part, and if she accept the provision made for her by the will, she must take the estate, subject to all claims against it. If she had the right to hold it exempt from the payment of her husband's debts, it would follow that a testator, by devising his estate to his wife, could place it out of the reach of his creditors. The estate in her hands as devisee has no such exemption, nor has she the right, as widow, to require that the testator's other estate shall be applied to the exoneration of the estate devised to her."

Stripped of inapplicable portions, Sections 2136 and 2137 of the statutes simply provide that a devise in lieu of the widow's share in testator's property which the law invests in her and over which the husband has no control bars the widow's interest in the estate given by the law unless within twelve months after her husband's death she shall waive or relinquish the devise by an ac-

knowledged or proven writing lodged with the clerk of the county court. This is in harmony with Section 1404 of the statutes which permits a widow in the same manner and within the same time to renounce the will and take her statutory distributable share as if no will had been made. It has been the consistent construction of these statutes that a widow accepting the benefits of the will cannot claim any right against the estate inconsistent therewith, and that her devise is like all others chargeable with its proportionate share of the debts and cost of administration if the undevised estate be not sufficient therefor. Grider v. Eubanks, 75 Ky. 510, 12 Bush 510; Hinson v. Ennis, 81 Ky. 363; Huhlein v. Huhlein, 87 Ky. 247, 250, 8 S. W. 260, 10 Ky. Law Rep. 107; Atchison v. Atchison, 106 Ky. 190, 50 S. W. 26, 20 Ky. Law Rep. 1755; Harrison v. Taylor's Adm'r, 51 S. W. 193, 21 Ky. Law Rep. 287; Bayes v. Howes, 113 Ky. 465, 68 S. W. 449, 24 Ky. Law Rep. 281; Kiesewetter v. Kress, 70 S. W. 1065, 24 Ky. Law Rep. 1239; Mercer v. Smith, 107 S. W. 1196, 32 Ky. Law Rep. 1003; Smith v. Perkins, 148 Ky. 387, 146 S. W. 758; Perry v. Wilson, 183 Ky. 155, 208 S. W. 776. There are other cases of like effect but these are sufficient to show that Tevis' Ex'rs v. McCreary, supra, is in some respects in conflict. To that extent it is overruled.

The first paragraph of Maynard's will expressly directs the payment of his debts. This manifests an intention that the bequests, one and all, should be subordinated. Whatever may be the technical conception of an equitable conversion of the realty into personalty (see Cropper v. Gaar's Ex'r, 151 Ky. 376, 151 S. W. 913, L. R. A. 1916B, 1139), it makes no difference. The will is clear and specific what the widow shall receive. By "an act of her own"—conversely to the condition prescribed by Section 2137 of the Statutes as entitling the widow to indemnity when deprived of her jointure or a part thereof—she elected to accept the devise with all its burdens. We are of opinion that the debts and costs of administration are to be paid in the same way as if decedent had died intestate and the widow's share calculated upon the net estate.

The trial court construed the bequest to the widow as within the terms of Section 2065 of the Statutes, which is as follows:

"If no time is fixed for the payment of a specific

pecuniary legacy, it shall be payable one year after the testator's death, and carry interest after due.''

Accordingly, he awarded interest on the widow's legacy, as described above, from December 11, 1928, which was one year after testator's death, subject, however, to a series of credits for sums paid commencing within ten days of her husband's death. The bequest to the widow was ''a pecuniary legacy,'' for it was payable in money, but it was not ''specific'' for it was indefinite and determinable only by a sale of all the property and a final settlement of the estate. It is not a ''definite, named sum of money,'' which is the meaning of the term ''specific pecuniary legacy.'' It was an unliquidated, general pecuniary legacy. Piper's Ex'r v. Adair, 64 S. W. 645, 23 Ky. Law Rep. 866; Harlan's Trustee v. Harlan, 228 Ky. 73, 14 S. W. (2d) 397; Tagnon's Adm'r'x v. Tagnon, 253 Ky. 374, 69 S. W. (2d) 714; Lee v. Gathright's Ex'r, 265 Ky. 148, 95 S. W. (2d) 1065.

Since the executor was directed by the will to sell the property and convert it into cash as soon as practicable, it is claimed that due execution of the fiducial trust required an early determination of the specific amount, and that that fact, if it does not bring the payment within the requirements of Section 2065, brings the right to interest under Section 3859 of the Statutes, which makes a personal representative liable for interest on surplus assets in his hands from that period. The real property consisted of two houses and lots in Lexington and an oil lease. The latter was sold April 6, 1928, for $2,150. Within six months after testator's death the executor entered into contracts with the widow and the other legatee on April 20, 1928, by which each of them agreed to buy one of the houses. Mrs. Maynard contracted to buy one for $4,600. In that instrument it was agreed that it was not possible at that time to determine the exact value of her interest in the estate; that when it should be determined it (less certain advancements) should be credited on the purchase price; and that she would pay the balance in cash. Mrs. Earles contracted to buy the other house for $6,000, the terms being substantially the same. On November 1, 1932, by a proper writing reciting that the executor deemed ''it urgently necessary to obtain such a sum as said described property might reasonably bring in order

to prevent suit by unpaid claimants," the widow's contract of April 20, 1928, was rescinded and the executor authorized to proceed with the sale of the property. This was done three days later for $3,000. During this period of four and one-half years, the rents went into the estate and the widow received her share. The contract with Mrs. Earles was likewise mutually rescinded on October 4, 1932, but because of financial conditions that house was not sold until April, 1936. When it was sold the balance due the widow, as calculated by the executor, was promptly paid. She retained it for awhile and then this suit was brought. During all this period it appears that the executor was distributing the income from rents and royalties within a reasonable time and that it never had any substantial sum of money in its hands available for distribution. Meanwhile a suit to recover $3,500 damages on a contract executed by the testator was filed in July, 1928. It was not settled until April, 1935. Other than the conclusion that the widow's devise was not a "specific pecuniary legacy," it seems to us that the widow is estopped from claiming interest thereon, having by her contract prevented a sale of one of the pieces of property, and tacitly, if not actually, agreed to the arrangement by which the other devisee should have the other house. During these years the oil royalties and other income was added to the estate and distributed from time to time so that the beneficiaries proportionately profited thereby. The executor and its successor as administrator de bonis non with the will annexed never received or used any sum or profited by reason of delayed distribution and it should not be charged with interest. Grainger's Ex'rs and Trustees v. Pennebaker, 247 Ky. 324, 56 S. W. (2d) 1007; Maynard v. Maynard's Adm'r, 251 Ky. 246, 64 S. W. (2d) 567, 91 A. L. R. 697.

The judgment is reversed with directions to enter another consistent with the conclusions stated.